IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CORNELIUS B. PRIOR, JR.,<br><br>Plaintiff,<br><br>v.<br><br>TRUSTEES OF THE COLLEGE OF THE HOLY CROSS,<br><br>Defendants. | Case No. |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Cornelius B. Prior, Jr. ("Mr. Prior"), by his undersigned counsel, brings this Complaint against the defendant Trustees of the College of the Holy Cross (referred to alternatively as "Holy Cross" and "the College") and alleges as follows:

**NATURE AND SUMMARY OF THIS ACTION**

1. Mr. Prior seeks to recover a series of conditional donations he made to Holy Cross beginning in 2012 for the express and targeted purpose of having the College develop a Performing Arts Center ("PAC") on its campus without delay. Contrary to its promises to Mr. Prior inducing him to donate approximately Eighteen Million Dollars ($18,000,000.00) toward this cause, Holy Cross chose to significantly delay development of a PAC, while holding Mr. Prior's money and pressuring him to donate an unintended additional Three Million Fifty-Four Thousand Seven Hundred and Twenty Dollars ($3,054,720.00) to push forward development of a separate project that he did not wish to fund, without which Holy Cross refused to honor its agreement to move forward with the PAC.

1

2. When Holy Cross finally moved forward with development of the PAC, more than five years after it promised to do so, it eventually demanded an additional Seven Million Dollars ($7,000,000.00) in contributions from Mr. Prior. Mr. Prior refused immediate payment of the College's sudden demand for such a large payment, because he had questions about the investment of his money during the College's prolonged delay and he was under legal restraint preventing transfer of the assets to be used to fund any additional donation to the College he might choose to make.

3. Holy Cross then spitefully cancelled a long planned and widely promoted initial concert at the PAC, ostensibly scheduled to honor Mr. Prior's contributions ("Opening Concert"), and in anticipation and reliance on which Mr. Prior had paid an additional significant amount to fund a new musical composition and invested his time and personal reputation promoting the event among former classmates and a number of dignitaries with whom he has personal relationships. Holy Cross punitively cancelled the Opening Concert event, to Mr. Prior's significant embarrassment and stress, in retaliation for his raising questions concerning how his money had been deployed by the College over the many years of delay that violated its agreement to pursue prompt and continuous development of the PAC.

4. Holy Cross has refused repeated requests by Mr. Prior to provide a full and detailed accounting for its investment and use of his funds. Holy Cross will not document creating a segregated account for Mr. Prior's conditional donations as it had agreed to do; it refuses to document all expenditures of Mr. Prior's funds to assure that his money was used exclusively to develop the PAC; and while claiming to have earned an amount representing less than one-half of one percent (1%) *per annum* on Mr. Prior's funds while holding his money for seven years before even commencing construction of the PAC, the College refuses to document its actual investments

and earnings resulting in such a shockingly small amount of reported "interest" on Mr. Prior's money.

5.  Unable to get Holy Cross to address its failures to honor the terms of its agreement as to how and when to use his targeted donations, or to honor its fiduciary duty to account for its use of his money, Mr. Prior seeks the remittance of the full amount of his donations in support of the PAC to the Prior Family Foundation, a charitable organization that will re-direct Mr. Prior's funds to an alternative charitable purpose, and a complete accounting and documentation of the College's investments of and earnings from, and the expenses paid with, Mr. Prior's funds over the last ten years.

## THE PARTIES

6.  Mr. Prior is an individual residing in St. Thomas, the United States Virgin Islands.

7.  The Trustees of the College of the Holy Cross is a duly constituted Massachusetts body corporate pursuant to the provisions of Chapter 99 of the Acts of 1865. The corporation has established, operates and maintains a private, four-year liberal arts college in Worcester, Massachusetts.

## JURISDICTION AND VENUE

8.  This action seeks rescission of conditionally donated funds, compensatory damages, injunctive relief and a declaratory judgment on behalf of Mr. Prior.

9.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs, and complete diversity exists between the parties to this action. Mr. Prior is a citizen of the United States Virgin Islands and Holy Cross is a citizen of Massachusetts.

10. This Court has personal jurisdiction over Holy Cross because it conducts and regularly transacts business in the Commonwealth of Massachusetts within this judicial district.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

12. Mr. Prior was a successful lawyer, banker and telecommunications industry executive, before retiring in 2017.

13. Like his father before him, Mr. Prior graduated from Holy Cross in 1956 after studying Latin, Greek and Philosophy. Mr. Prior went on to serve three years as a naval officer, graduate from Harvard Law School in 1962, study law in Sao Paulo, Brazil as a Fulbright Scholar in 1963, and then begin a successful career practicing at the law firm of Sullivan & Cromwell in New York City.

14. Mr. Prior has donated substantial time, money, and other resources to various charities contributing to higher education, bettering the economic health of lesser developed countries, and programs supporting the study of the arts and humanities.

15. Consistent with his commitment to furthering the arts, humanities, and access to higher education, Mr. Prior has made a series of charitable donations to the College over the years.

16. In 1998, Mr. Prior donated Five Million Dollars ($5,000,000.00) to establish three professorships, the Rev. Gerard Mears, S.J., Professorship in Fine Arts, the Rev. Maurice F. Reidy, S.J., Professorship in History, and the Stephen J. Prior Professorship in Humanities. At the time, this was Holy Cross's largest single donation and helped launch the College's record-setting "Lift High the Cross" fundraising campaign.

17. Mr. Prior also served as a member of the Board of Trustees from 1997 through 2005 and later served on the Holy Cross President's Advisory Council, which he helped to establish in 2010.

18. In 2006, as part of the celebration of his 50th class reunion, Mr. Prior donated an additional $5,000,000.00 to expand the professorship endowments.

19. During this time, Mr. Prior provided additional donations to the College including gifts in support of exhibitions at the College's art gallery, a major sponsorship of the Terri Priest painting series titled "Paths to Divine Light Through Vermeer's Lens," and a co-sponsorship of the "Hope and Healing" exhibition at the Worcester Art Museum with the College.

20. In 2012, the President's Advisory Council, of which Mr. Prior was a member, received a faculty presentation and tour identifying a material need for an on-campus performing arts center ("PAC").  The President's Advisory Council formally endorsed the faculty's priority and recommended it to the Board of Trustees.  The Holy Cross Board of Trustees subsequently determined instead to prioritize and pursue funding for a major athletic facility that Mr. Prior (among others) did not consider to be as integral to the College's liberal arts academic mission.  In an express effort to persuade the College to change that decision or at least to prioritize development of a PAC in addition to an athletic facility, Mr. Prior offered to donate Twenty Five Million Dollars ($25,000,000) to support the development of a PAC should the College use that money to move forward as promptly as possible with such a project.

21. Mr. Prior made clear that he was earnest in his offer to contribute $25,000,000.00 should the College commit to honor its faculty's recommendation for the urgent development of a PAC by donating an initial $2,000,000.00 toward that cause in December 2012.

22. Thereafter, the parties discussed specific terms for Mr. Prior's pledge and the College's commitment to use his donations solely and promptly for development of a PAC. Eventually, a written pledge agreement was prepared and signed by the parties in the form of a letter dated February 28, 2014 ("Pledge Letter").

23. Mr. Prior made further contributions to Holy Cross in reliance upon its promises to hold his contributions (including the donation he made in December 2012) in a segregated account for the sole use of funding the prompt and continuous development of a PAC. Mr. Prior further relied upon Holy Cross's promise to use his donations and all income to be earned on his donations for the benefit of the prompt development of a PAC when making further contributions annually from 2012 to 2016 totaling just under $18,000,000.00 (the "Conditional Donations").

24. Holy Cross understood and agreed that it could not keep and use Mr. Prior's Conditional Donations unless held in a segregated account, invested solely for the benefit of the PAC, and used solely for the prompt and continuous development of the PAC. These conditions were the equivalent of a trust and Holy Cross, as the holder of Mr. Prior's Conditional Donations, undertook a fiduciary duty to honor the terms of that trust and account to Mr. Prior for doing so.

25. Holy Cross did not honor its agreement that it would promptly pursue development of a PAC. Instead, in 2015, the President informed the Board of Trustees that its athletic facility project, which the College determined to prioritize despite faculty's clear recommendation, still required an additional Three Million Dollars ($3,000,000.00) in pledges to meet a then-recently adopted policy of not beginning construction on any project prior to receiving pledges covering sixty seven per cent (67%) of the projected costs. Despite its existing agreement with Mr. Prior, Holy Cross would not move forward with development of the PAC unless and until construction

of the athletic facility project was completed, and it allowed the hold on construction of the athletic facility to block progress of its promised development of the PAC.

26. Mr. Prior did not have an interest in or intention personally to help fund the athletic facility project. In fact, the initial impetus for Mr. Prior to propose donating $25,000,000.00 toward the prompt development of a PAC was to address the problem that Mr. Prior (and others) saw with the College's prioritization of projects not closely aligned with its liberal arts academic mission. Nevertheless, in order to get Holy Cross to honor its agreement concerning development of the PAC without further delay, Mr. Prior donated the $3,054,720.00 reported as necessary to commence construction of the athletic center, so that that the athletic center project would no longer act as a block on the pursuit of the PAC project.

27. Nevertheless, inexplicably, Holy Cross continued to delay active development of a PAC for approximately four more years. Holy Cross retained Mr. Prior's Conditional Donations throughout, without return or request that he approve any delay in the use of his funds as agreed.

28. During this period of unexcused delay, the College determined to advance construction of an off-campus Retreat Center at a cost of Thirty Million Dollars ($30,000,000.00), further ignoring the faculty's clearly identified priority, which was the priority commitment Mr. Prior asked Holy Cross to make in order to receive his proposed gift of $25,000,000.00.

29. Holy Cross never documented how it held Mr. Prior's Conditional Donations to assure him that they were accounted for in a segregated account, nor has it documented its investments of and income earned from the Conditional Donations over the many years of delay, nor the specific expenses paid with his funds in order to demonstrate the Conditional Donations have been used solely for construction of the PAC. Holy Cross has refused repeated requests by Mr. Prior that it provide such a detailed accounting of his funds, and instead has been willing to

provide only a high level, conclusory summary, including a statement that it earned "interest" of Five Hundred Seventy-Six Thousand Six Hundred and Seventy Dollars ($576,670.00).

30. Holy Cross will not provide any details concerning the actual investments it made with Mr. Prior's money, nor has it accounted for the reasonable investment income that could have been earned by appropriate management of his funds during the ten years it has held those funds.

31. In 2022, as Holy Cross finally neared completion of the long-delayed PAC, the College proposed to host an Opening Concert on December 16, 2022, with music commissioned by Mr. Prior and composed by Ozvaldo Golifor specifically intended for performance at that Opening Concert by Johnny Gandelsmann and the Knights Orchestra of New York City.

32. Mr. Prior understood that Holy Cross hoped to keep his Conditional Donations, despite not honoring the conditions on which those donations were premised. Mr. Prior further understood that Holy Cross wanted him to make an additional contribution to help fund the total cost of the long-delayed PAC. Given the proposed Opening Concert at least in part in his honor, Mr. Prior was willing to consider both permitting Holy Cross to keep his Conditional Donations and making a further donation. He asked for a meeting with senior management of the College to discuss how his money had been held, invested and used in order to consider whether an additional contribution was appropriate, and if so how much. Mr. Prior offered to participate in such a meeting when he would be attending the opening of the theater at the PAC on November 3, 2022.

33. This request apparently angered decision makers at Holy Cross, because no senior management representative or Trustee agreed to meet with Mr. Prior at the theater opening event, or even to attend that event. Instead, Mr. Prior received an aggressive conference call the next day from two representatives of the Executive Committee demanding that he pay an additional Seven Million Dollars ($7,000,000.00) to the College in five days, or the College would cancel the

Opening Concert scheduled for December 16, 2022.  Mr. Prior considered how he could meet the College's demand for such a substantial amount of money so quickly, which turned out not to be possible due to a legally binding hold on transactions in the stock that he would need to transfer in order to make a further gift of that size.  Holy Cross long understood that Mr. Prior's donations in support of the development of the PAC would consist of transfers of shares in that company.

34. Mr. Prior then learned that the College never even intended to honor the terms of its shocking five day demand for $7,000,000.00.  Specifically, Mr. Prior learned that Holy Cross in fact cancelled the Knights Orchestra's engagement shortly after making its demand, effectively cancelling the planned Opening Concert without even waiting its unilaterally imposed five-day deadline, while still holding out to Mr. Prior that he had to pay $7,000,000.00 in order to prevent that very action.

35. Unaware that the College had already cancelled the Opening Concert, Mr. Prior undertook significant efforts and expense to prepare a proposed security interest in stock holdings valued at $10 million that would be more than sufficient to cover any additional donation he might make and would give him time to consider the information he requested regarding the investment of, earnings from, and uses of his Conditional Donations.  Holy Cross did not accept Mr. Prior's good faith proposal to provide security for its alleged claim to an additional donation and re-confirm the Opening Concert date, instead it confirmed the cancellation of the Opening Concert and continued its effort to pressure Mr. Prior to make a $7,000,000.00 without addressing any of his questions concerning the appropriateness of that demand.  Holy Cross failed to provide the detailed information and documentation Mr. Prior requested.

36. In reliance on Holy Cross's promise to host a Opening Concert at the PAC in part in his honor, Mr. Prior put his reputation on the line by asking the President of the College to invite

his classmates (who planned an expensive class gift of a concert grand piano for the event), acclaimed architect Liz Diller, three current Justices of the U.S. Supreme Court, former Deans of the Harvard Law School, current professors at Harvard, and Boston's Cardinal O'Malley, among others. Mr. Prior had previously paid One Hundred Fifty Thousand Dollars ($150,000.00) to underwrite former Carnegie Hall Composer in Residence and then Holy Cross Professor Osvaldo Golijov's composition of a new work to be performed by the Knights Orchestra at the Opening Concert.

37. Despite repeated requests for an explanation of its conduct, Holy Cross has refused to discuss why it threatened to cancel the Opening Concert unless $7,000,000.00 was paid within five days then canceled the event and reaffirmed that decision, while rebuffing an opportunity to restore the scheduled performance when Mr. Prior offered a security interest in excess of the amount claimed by the College, leaving itself unable to perform even if Mr. Prior knuckled-under to its strong-arm demand for those funds.

38. By taking actions spitefully designed to harm Mr. Prior's reputation and attempt to humiliate him among a group of personal friends and dignitaries in retaliation for having asked questions concerning the College's handling of his Conditional Donations and whether he would make a further multi-million dollar donation, Holy Cross violated its fiduciary responsibility to hold and protect Mr. Prior's Conditional Donations and to assure that those funds were used solely for the targeted purpose, and on the specific terms, identified by Mr. Prior and initially accepted by the College.

## COUNT I
## BREACH OF FIDUCIARY DUTY

39. Mr. Prior incorporates the allegations in Paragraph 1 through 38 above as if set forth here in their entirety.

40. As a matter of Massachusetts law, Holy Cross is a fiduciary obligated to act for the benefit of donors or individuals making charitable pledges. The College has good faith obligation to discharge its duty with due care, skill, prudence, and diligence and knows, or should reasonably expect, that others will rely on the College to act accordingly.

41. Holy Cross owed these fiduciary obligations to Mr. Prior in connection with its accepting, holding and using his Conditional Donations.

42. Holy Cross's actions and failures to account set forth above violated the fiduciary obligations it owes to Mr. Prior.

43. As a result of Holy Cross's breaches of fiduciary duty, Mr. Prior has suffered, is suffering, and will continue to suffer damages, including without limitation the loss of the use of and right to control the use of his Conditional Donations, harm to his reputation, stress and emotional distress having to address a threat designed to force him to waive his right to request an accounting of his Conditional Donations, and attorneys' fees and related costs incurred to hold Holy Cross accountable for his funds.

44. In further violation of its fiduciary obligations, Holy Cross failed to prudently invest Mr. Prior's Conditional Donations, while holding those funds without putting them to the use directed by Mr. Prior for at least five years beyond its agreement to promptly apply the funds to the development of a PAC, causing a substantial loss of value of Mr. Prior's funds making up the Conditional Donations.

45. Mr. Prior is entitled to recover compensatory damages suffered as a result of Holy Cross's breaches of fiduciary duty, in an amount to be determined at trial and which amount should be remitted to the Prior Family Foundation, a charitable organization that will re-direct the use of Mr. Prior's Conditional Donations.

## COUNT II
## ACCOUNTING

46. Mr. Prior incorporates the allegations in Paragraph 1 through 45 above as if set forth here in their entirety.

47. Holy Cross owes Mr. Prior a fiduciary duty to act with the highest degree of fidelity and good faith in the handling and application of his Conditional Donations. The College also has an obligation to account to Mr. Prior as the beneficiary for its fiduciary management of the funds he donated.

48. To date, despite repeated demands, Holy Cross has refused to provide Mr. Prior a full accounting and supporting documentation identifying a segregated account for, the investment of and income earned from, and all payments made with the funds making up Mr. Prior's Conditional Donations.

49. As a matter of equity and in order to hold Holy Cross responsible to discharging its fiduciary obligations owed to Mr. Prior, Mr. Prior is entitled to a full accounting identifying and documenting the segregated account, if one existed, in which it held and accounted for his Conditional Donations, all investments made with and income earned from the Conditional Donations, and all transactions in which the Conditional Donations and the income earned from those funds were used, in whole or in part, and the purpose of each such expenditure.

## COUNT III
## BREACH OF CONTRACT

50. Mr. Prior incorporates the allegations in Paragraph 1 through 38 above as if set forth here in their entirety.

51. In order to induce Mr. Prior to make his Conditional Donations, Holy Cross agreed to maintain those funds in a segregated account, use Mr. Prior's Conditional Donations solely for

his desired purpose of developing a PAC, to use all investment income from the Conditional Donations solely for the benefit of the PAC, and to promptly and continuously develop the PAC without delay based on other projects that Mr. Prior believed were not as important to the liberal arts academic mission of the College, as earnestly presented by the faculty of the College and recommended by the President's Advisory Council to the Board of Trustees in 2012.

52. In reliance on Holy Cross's agreement to these terms, Mr. Prior made his Conditional Donations totaling approximately $18,000,000.00.

53. In material breach of its contractual obligations, Holy Cross failed to identify a segregated account in which it invested Mr. Prior's Conditional Donations and failed to use those funds to promptly and continuously develop the PAC.

54. Because of the College's breaches, Mr. Prior has suffered, is suffering, and will continue to suffer damages including the loss of use and loss of the right to control the specific use of his funds making up the Conditional Donations and the payment of an additional $3,054,720.00 to get the College to start construction of a project that Mr. Prior did not wish to support and relieve a hold on moving forward with the PAC imposed by the College that would last until that other project was completed.

55. As a result of Holy Cross's breaches of its contractual obligations, Mr. Prior is entitled to rescind his Conditional Donations plus his additional payment of $3,054,720.00 and obtain full remittance of his funds to the Prior Family Foundation, in addition to a reasonable market rate of investment return that could have been earned on the Conditional Donations over the ten years that Holy Cross held those funds despite not complying with the contractual conditions to which it agreed.

## COUNT IV
## DECLARATORY JUDGMENT

56. Mr. Prior incorporates the allegations in Paragraph 1 through 55 above as if set forth here in their entirety.

57. A dispute has arisen between the parties concerning Holy Cross's performance of its obligations under, and any ongoing enforceability of, the Pledge Letter.

58. There is an actual and justiciable controversy between the parties concerning their respective rights and obligations concerning the Pledge Letter.

59. Mr. Prior has informed Holy Cross of his position that the College has materially breached its obligations under the Pledge Letter, terminating any ongoing enforceability of that document and subjecting the Charitable Donations to remittance to the Prior Family Foundation, a charitable organization that will re-direct Mr. Prior's funds to an alternative charitable purpose.

60. Holy Cross takes the position that it is authorized to keep the Charitable Donations pursuant to the Pledge Letter.

61. A determination by this Court that Holy Cross stands in material breach of its obligations under the Pledge Letter, such that the Pledge Letter provides no enforceable rights or benefits to the College and imposes no enforceable obligation on Mr. Prior, will resolve the parties' dispute and will enable the parties to determine future actions in connection with the terms of that document.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Prior hereby demands a trial by jury for each and every issue so permitted by law and statute.

## **REQUESTS FOR RELIEF**

WHEREFORE, Mr. Prior respectfully requests that the Court enter Judgment against Holy Cross, awarding Mr. Prior:

(a) An order requiring Holy Cross to provide an accounting and documents sufficient to establish if Mr. Prior's donations were comingled with any other funds;

(b) Rescission and remittance of the Conditional Donations to the Prior Family Foundation, a charitable organization that will re-direct Mr. Prior's funds to an alternative charitable purpose, along with damages for the loss of the reasonable market rate of return that could have been realized from the reasonable investment of the funds making up the Conditional Donations over the more than ten years since the first donation was made;

(c) An order holding Holy Cross liable for breach of its fiduciary duties owed to Mr. Prior in an amount of compensatory damages to be established at trial;

(e) A declaration that Holy Cross is in material breach of the February 28, 2014 Pledge Letter, rendering that agreement unenforceable against Mr. Prior; and

(f) All such other and further relief as the Court deems just and equitable.

September 13, 2023

Respectfully submitted,

By: */s/ Steven M. Cowley*
Steven M. Cowley (BBO# 554534)
Angela J. Benoit (BBO# 703213)
100 High Street, Suite 2400
Boston, MA 02110
(857) 488-4200
scowley@duanemorris.com
abenoit@duanemorris.com

*Counsel for Plaintiff Cornelius B. Prior, Jr.*