UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CORNELIUS B. PRIOR, JR.,<br><br>      Plaintiff,<br><br>v.<br><br>TRUSTEES OF THE COLLEGE OF THE HOLY CROSS,<br><br>      Defendant. | Case No. 4:23-cv-40116 |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL MEDIATION AND ARBITRATION, TO APPOINT A MEDIATOR AND ARBITRATOR, AND TO STAY FURTHER PROCEEDINGS**

**LEAVE TO FILE GRANTED ON JULY 26, 2024**

Defendant Trustees of the College of the Holy Cross (the "College") submits this Reply brief in further support of its Motion to Compel Mediation and Arbitration, to Appoint a Mediator and Arbitrator, and to Stay Further Proceedings (the "Motion"; ECF Doc. 5). The Opposition to the Motion filed by Plaintiff Cornelius B. Prior ("Mr. Prior") (ECF Doc. 7) omits or ignores:

- Binding Supreme Court and First Circuit case law that requires the Court: (i) to compel arbitration of issues that "relate to" or even "touch upon" the claims and allegations in Mr. Prior's Complaint; and (ii) to resolve any doubt about whether an arbitrable issue exists in favor of compelling arbitration;

- The allegations in Mr. Prior's Complaint, which repeatedly and expressly allege: (i) the existence of a valid and enforceable Pledge Agreement (the "Agreement"); and (ii) a dispute over whether the College met the "conditions" for Mr. Prior's donations, including a purported condition requiring "prompt and continuous development" of the Performing Arts Center ("PAC"), which dispute is clearly arbitrable pursuant to the text of Paragraphs 6 and 10 of the Agreement; and

1

- A key, recent communication and the six-month-plus history of the College's good faith efforts to confer about moving this dispute to mediation and arbitration and to provide information and arguments supporting the College's positions in advance of filing the Motion.

Because Mr. Prior's Opposition ignores or omits these critical points, and does nothing to rebut the presumption of arbitrability, this Court should grant the College's Motion for the reasons set forth herein and in its initial supporting Memorandum (ECF Doc. 6).

**A. The Arbitration Agreement Was Duly Approved by the College's Executive Committee Exercising the Powers of the Board and Is Therefore Binding and Enforceable, Consistent with Mr. Prior's Own Complaint Allegations.**

Mr. Prior's outrageous suggestion that the parties do not have an enforceable arbitration agreement because the College's Board of Trustees never approved the Agreement is wrong on both the facts and the law and is refuted by Mr. Prior's own admissions and court filings.

The parties negotiated the text of the Agreement between July 2013 and February 2014.[1] Following Mr. Prior's approval of the final text on February 20, 2014, the Board's Executive Committee approved the Agreement on February 26, 2014. The College signed and sent the Agreement to Mr. Prior on February 28, 2014, expressly noting that the Executive Committee had voted to approve it. On March 3, 2014, Mr. Prior co-signed and returned the Agreement.

Mr. Prior does not dispute that (a) the Executive Committee approved the Agreement, (b) the College's By-Laws authorize the Executive Committee to exercise all powers of the Board between Board meetings,[2] or (c) the Agreement was signed by both parties. These undisputed facts conclusively establish that an enforceable arbitration agreement exists.

---

[1] The language concerning approval by the Board was added to the proposed Agreement in September 2013.

[2] Mr. Prior, who was a Trustee for two separate eight-year terms, now claims there is "mystery" about this provision of the By-Laws in effect in February 2014. There is no mystery. At all relevant times through the present, the College's By-Laws have provided for the Executive Committee to exercise the powers and duties of the full Board between meetings, as expressly authorized by Massachusetts law. *See* M.G.L. ch. 156B, § 55 ("If and to the extent authorized by . . . its by-laws, a corporation may provide for an executive committee . . . to be elected from and by

Mr. Prior's Opposition attempts to overcome this clear conclusion by misstating the express terms of the Agreement. It misleadingly asserts that the "Pledge [Agreement] states on its face that the parties did not consider it final and binding on the day it was signed;" that "on February 28 the parties expressly stated that the Board of Trustees must still vote to accept the Pledge Letter before a binding agreement would exist"; and that "the parties agreed the necessary vote had not yet occurred as of February 28, 2014." (Opp. at 11-12.) But these characterizations of the Agreement's text are false: no such words appear in the Agreement.

In fact, Paragraph 14 of the Agreement states, in relevant part, <u>only</u> that it "must be approved by the College's Board of Trustees" before it would become binding on either party. Despite being expressly told about the Executive Committee's approval on February 28, 2014, before he signed the Agreement, Mr. Prior now asserts that a full Board vote was required *after* it was signed. But a later Board vote was neither required by Massachusetts law, nor by the College's By-Laws, nor by Mr. Prior at the time as reflected in the contemporaneous correspondence. The Executive Committee was explicitly empowered to act on behalf of the Board and its vote on February 26, 2014, was an authorized act of the Board.

Nothing in Paragraph 14 or elsewhere in the Agreement sets forth any temporal limitation on <u>when</u> that approval must occur, and nothing prohibited such approval from occurring <u>before</u> execution of the Agreement by the parties. The College is not aware of any provision of

---

its board of directors, and the directors may delegate to any such committee . . . all of their powers…."); M.G.L. ch. 180, § 10C (applying M.G.L. ch. 156B, § 55 to charitable corporations); Trustees of the College of the Holy Cross By-Laws, Sept. 10, 2022, Art. IV, § 2, *available at* https://www.holycross.edu/media/230121/download?attachment (current College By-Laws providing for same delegation of all Board powers to the Executive Committee between meetings). For the avoidance of any doubt, the Supplemental Declaration of Dorothy A. Hauver, submitted herewith, attaches (a) the email to the Executive Committee with the attachment – a copy of the Agreement containing the identical provisions that the parties signed – which was circulated prior to the Executive Committee's February 26, 2014 vote to approve the same; (b) the email from the College to Mr. Prior with a copy of the Agreement signed on behalf of the College, and (c) Mr. Prior's email returning the fully signed Agreement.

Massachusetts law that might impose any such requirement, and Mr. Prior's Opposition identifies none. If Mr. Prior's newly invented temporal limitation were accepted, corporate Boards and Executive Committees across Massachusetts would be surprised to learn that they have to approve such agreements twice – once before execution by an authorized corporate signatory, and once again afterwards. This is not the law.[3]

Moreover, Mr. Prior's Complaint allegations are binding for the purposes of a motion to compel mediation and arbitration. See, e.g., Whitehill v. Atl. Bldg. Sys., LLC, No. 22-CV-1118-WJM-KLM, 2023 WL 1928000, at *6 (D. Colo. Feb. 10, 2023) (stating that "[a]llegations in a complaint are binding admissions" for purposes of enforcing arbitration agreement) (quoting Rios v. Redding, 2022 WL 842749, at *2 (10th Cir. March 22, 2022)); Fuller v. Frontline Asset Strategies, LLC, No. 17 C 7901, 2018 WL 1744674, at *2 (N.D. Ill. Apr. 11, 2018) (holding that complaint allegations were "binding admissions" of existence and assignment of arbitration agreement) (quoting Jackson v. Marion Cty., 66 F.3d 151, 153 (7th Cir. 1995)). See also Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., 976 F.2d 58 (1st Cir. 1992) (allegation in complaint of existence of written contract between parties was a binding "judicial admission"). Here, Mr. Prior expressly alleges the existence of "a written pledge agreement" (¶ 22); references that same "agreement" at least eight (8) more times within his allegations (¶¶ 1, 3, 5, 24-26, 44, 52); and even requests that the Court declare that the College is "in material breach of" that

---

[3] Because the Executive Committee's approval of the Agreement was sufficient to bind the parties under the Agreement's express terms, the College's By-Laws, and Massachusetts law, no further action by the full Board was required.  Nonetheless, the full Board (including Mr. Prior) unanimously approved the minutes of the Executive Committee meeting, which minutes included an express statement of approval of the Agreement.  This shows that the Board was made aware of, and acquiesced in, the Executive Committee's approval. The fact that the Board could have, but did not, take any further action to scrutinize or rescind the Executive Committee's approval is further evidence that such approval was valid and binding on the parties.  See ECF Doc. 6-1, Hauver Decl., Ex. 2, Art. IV, § 2 (providing that "[t]he board of trustees shall have power to rescind any vote or resolution of the executive committee"); cf. Anderson v. K. G. Moore, Inc., 6 Mass. App. Ct. 386, 390 (1978) (enforcing contract "known to and acquiesced in by all the then directors" despite that board had not formally voted to approve it).

agreement, thus "rendering that agreement unenforceable against [him]." Compl., p. 15, ¶ (e). Mr. Prior's suggestion in his Opposition that the Agreement was never binding on the parties is wholly inconsistent with these Complaint allegations.[4] As the authorities cited above establish, such allegations are binding judicial admissions in the context of the instant motion.

Mr. Prior cannot claim the Agreement exists only when convenient for him (i.e., when he thinks it will help his Complaint) and then deny the existence of that same Agreement when inconvenient for him (i.e., because it would require mediation and arbitration, which he now seeks to avoid). The Court should not permit Mr. Prior to have it both ways and should require him to mediate and arbitrate according to the terms of his admittedly binding Agreement.

**B. Mr. Prior's Complaint Alleges a Dispute over Whether the College Fulfilled the Conditions of his Donations Under the Agreement; That Dispute Is Covered by the Agreement's Mediation and Arbitration Clause; and Any Doubt Must Be Resolved in Favor of Arbitration**

In determining whether a particular claim falls within the scope of the parties' arbitration agreement, **courts focus on the factual allegations in the Complaint rather than the legal causes of action asserted**. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 622 n.9, 624 n.13 (1985); see also Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 7–9 (1st Cir. 2014) ("To determine whether [a party's] claims fall within the scope of the arbitration clause, we focus on the factual allegations underlying [the] claims in the [c]omplaint.") (internal quotes and citation omitted). If the allegations underlying the claims

---

[4] Plaintiff's (incorrect) assertion in the Complaint (p. 15, ¶ (e)) that the Agreement was "render[ed] . . . unenforceable" necessarily requires the conclusion that it was, in fact, enforceable at its inception. This conclusion is also supported by Mr. Prior's November 7, 2022 email stating "It is . . . . a legal absurdity to take one sentence from a contract and think that is all there is to it. Keep reading and you will find in Section 10 a very civilized paragraph suggesting that in the case of a disagreement the parties . . . engage in direct discussion, then go to mediation if such discussion fails and finally to arbitration." Mr. Prior's argument also fails to account for his partial performance over many years under an Agreement which he now argues is unenforceable, during which period he (a) made donations pursuant to the Agreement; (b) was a member of the Board, which received formal updates on the PAC's fundraising and construction progress; and (c) gave no indication that the Agreement was not binding while the College constructed a more than $100 million building named for him.

Case 4:23-cv-40116-MRG   Document 20   Filed 07/26/24   Page 6 of 11

"touch matters" covered by the parties' arbitration agreement, then those claims must be arbitrated, see Mitsubishi Motors Corp., 473 U.S. at 624 n.13, whatever the "legal label[s] assigned to [them]." Sheridan v. Page, No. 18-CV-449-LM, 2018 WL 6191884, at *3 (D.N.H. Nov. 28, 2018). Mr. Prior's Opposition assiduously ignores this controlling principle; as noted, it is written as though the factual allegations in his Complaint do not exist. But an examination of the Complaint establishes that Mr. Prior's allegations therein plainly raise arbitrable issues.

Paragraph 6 of the Agreement contained four milestones, each of which triggered Mr. Prior's obligation to make a further $5 million donation toward the total $25 million pledge ($5 million of which had already been donated prior to the Agreement's execution). Paragraphs 8 and 9 of the Agreement (among others) imposed further conditions on such funds (e.g., the funds were to be maintained in a segregated account and all such funds and any income therefrom were required to be spent on the PAC). Paragraph 10 provided for mediation and arbitration of any dispute over whether conditions for Mr. Prior's payments pursuant to Paragraph 6 had been met.

Mr. Prior's Opposition attempts to distinguish "covenants" from "conditions" and, relying on these "legal labels," argues that only disputes over "conditions" are arbitrable. (Opp. at 14.) But Mr. Prior's own Complaint – which must be the focus of the Court's arbitrability analysis – makes clear that this is a distinction without a difference. In his Complaint, Mr. Prior alleges in the very first paragraph and repeatedly throughout that he made "conditional donations" to the College, for which he uses the capitalized term "Conditional Donations." Compl. ¶¶ 1, 3, 8, 23 24, 27, 29, 32, 35, 38. "Conditional" means "[s]ubject to or dependent on a condition." CONDITIONAL, Black's Law Dictionary (11th ed. 2019). The Complaint repeatedly asserts (incorrectly) that the College failed to meet the "conditions" of his payments (Compl. ¶¶ 4, 24, 27, 29, 32, 55) – in Mr. Prior's words, the College did "not honor[] **the**

6

**conditions** on which [his] donations were premised," Compl. ¶ 32, and did "not comply with the **contractual conditions** to which it agreed." Compl. ¶ 55 (emphasis added). The Complaint asserts that this not only excuses Mr. Prior from donating the remaining $7 million owed under the Agreement, but also requires a refund of the more than $18 million he has donated to date. Compl. ¶¶ 1-2, 59, p. 15, ¶¶ (b), (e).

Without question, the gravamen of Mr. Prior's Complaint is that the College "chose to significantly delay development of [the] PAC" and that this purportedly "violated its agreement to pursue prompt and continuous development of the PAC." Compl. ¶¶ 1, 3. This foundational allegation recurs throughout the Complaint and is the centerpiece of Mr. Prior's claims. *See* Compl. ¶¶ 1, 3, 26-29, 31, 32, 51 (asserting undue "delay"), ¶¶ 3, 20, 22-25, 44, 51, 53 (asserting donations were conditioned on "prompt and continuous" construction and/or asserting College failed to act "promptly" in this regard).[5]

Critically, the sole possible textual basis for the College's asserted obligation to pursue "prompt and continuous development" of the PAC is contained in Paragraph 6 of the Agreement – specifically, the milestone requiring the College to notify Mr. Prior once it was "diligently and continuously prosecuting" development of the PAC. No other language in the Agreement purports to impose any such obligation. It is indisputable that the Mediation and Arbitration Clause in Paragraph 10 of the Agreement covers disputes over "any condition" for Mr. Prior's "payments described in Paragraph 6." Mr. Prior claims that the College did not meet the "condition" of diligently and continuously prosecuting the development of the PAC; the College

---

[5] To be sure, these allegations are incorrect. As Mr. Prior was fully aware given his position on the Board, the College moved forward with development of the PAC as promptly as possible consistent with prudent fiscal management, as discussed in the College's initial memorandum in support of this motion. See ECF Doc. 5 at pp. 6-9 and specifically n.3 (noting, *inter alia*, that the estimated costs of the project ballooned such that more than $50 million in additional funds needed to be raised in order to meet the 2/3 funding prerequisite for groundbreaking).

claims that it did. This central dispute is plainly arbitrable under both the express terms of Paragraph 10 of the Agreement (requiring mediation and arbitration of disputes "relating to" any condition of payment) and controlling law. *See Mitsubishi Motors Corp.*, 473 U.S. at 622 n.13 (requiring arbitration of issues that "touch matters" covered by the parties' arbitration agreement). Mr. Prior also suggests that the College failed to meet other conditions for his payments under Paragraph 6, i.e., the conditions set forth in Paragraphs 8 and 9 of the Agreement that the College deposit his donated funds in a segregated account and spend such funds (and income earned therefrom) only on the development of the PAC. These allegations are arbitrable for the same reasons stated above: they "relat[e] to" and "touch on" conditions for Mr. Prior's pledge payments.[6] HD, Ex. 1, ¶ 10; Mitsubishi Motors Corp., 473 U.S. at 622 n.13.

Because there is no doubt that resolution of the issues raised by Mr. Prior's claims will require resort to Paragraph 6 of the Agreement, among other provisions establishing conditions of his payments, mediation and arbitration must be compelled here. Grand Wireless, Inc., 748 F.3d at 8-9 (noting that the party opposing arbitration "need[s] to show that the parties *intended to exclude* [their] dispute from the scope of the arbitration clause, ... not merely that the arbitration clause lacked explicit language covering [its] claims.") (emphasis in original) (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)); see also Sharju Ltd. P'ship v. Choice Hotels Int'l, Inc., No. 3:01-cv-2605-X, 2002 WL 107171, at *2 (N.D. Tex.

---

[6] Notably, Mr. Prior does not assert any factual basis to claim that the College did not comply with these conditions; rather, he asserts only that the information provided to date by the College has not sufficiently convinced him of its compliance. See Compl. ¶ 29 (alleging that the College provided a "summary" of the use of the donated funds and interest earned therefrom, but that he purportedly found it to be "conclusory" and not sufficiently "detailed"). Neither the Agreement, nor applicable law, imposes a fiduciary duty on the College to Mr. Prior or provides Mr. Prior with a right to an accounting. Mr. Prior's alleged dissatisfaction with the amount of "detail" provided by the College is, of course, a very thin reed on which to base a legal claim for a full refund of nearly $18 million that has already been spent on constructing the building that bears his name. Whatever their (lack of) merit, these issues can likewise properly be addressed through the mediation and arbitration processes that this Court should compel.

Jan. 22, 2002) (holding that tort claim was arbitrable because the claim depended on whether the parties complied with agreement terms that were covered by an arbitration clause).

Even if it were a close call – and it is not – black letter law "requires that ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." Grand Wireless, Inc., 748 F.3d at 7 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 475–76 (1989); other citation omitted). Binding First Circuit case law requires "the presumption of arbitrability [to be] applied to scope questions that arise 'when the parties have a contract that provides for arbitration of some issues and it is unclear whether a specific dispute falls within that contract.'" Id. (quoting Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 25 (1st Cir. 2000)). As the Supreme Court long ago held, "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. **Doubts should be resolved in favor of coverage.**" United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960) (emphasis added). These binding, well established principles of the law of arbitration – which are nowhere addressed in Mr. Prior's Opposition – are dispositive here. Accordingly, the Court should compel mediation and arbitration, and stay this action, on the terms set forth in the College's motion.

**C. Counsel Conferred Extensively Regarding Mediation and Arbitration of the Parties' Dispute Over the Course of More Than Six Months and Fully Complied with L.R. 7.1(a)(2) Before the College Filed This Motion**

Mr. Prior's contention that the College's counsel did not comply with the pre-motion conference requirements of Local Rule 7.1(a)(2) is risible. Since February 2023, counsel for the College has frequently and repeatedly communicated with Mr. Prior's counsel about mediating and/or arbitrating the parties' disputes, providing detailed information and documents supporting

9

its positions – including materials establishing that the Executive Committee approved the Agreement and explanations for why the College believes mediation and arbitration of all disputes is required.  Continuing a pattern of omitting important documents from his filings, Mr. Prior neglected to attach to his Opposition the College's then most recent communication, dated September 28, 2023, recapping the College's pre-motion conference efforts and making a final effort to see if a motion might be avoided. That email is attached to the Declaration of Joseph L. Bierwirth, Jr. submitted herewith.

Local Rule 7.1(a)(2) requires "good faith" efforts to narrow issues before filing a motion.  It does not – as Mr. Prior would have it here – require counsel to spend countless hours engaged in a letter-writing campaign of attrition to address opposing counsel's repeated demands to provide information previously provided, to restate arguments already stated, or to convince opposing counsel of points of fact and law when counsel has made clear he will never be so convinced. Courts in this District have held that even "meager" efforts to confer "do not warrant summary denial of [a] motion," particularly where "it does not appear that [such efforts] would have changed the parties' fundamental positions."  Sensitech, Inc. v. LimeStone FZE, 581 F. Supp. 3d 342, 350–51 (D. Mass. 2022) (internal quotes and citation omitted).  Here, the College's efforts were the opposite of meager – they were extensive, substantive, and made in good faith – and Mr. Prior's incorrect assertions otherwise should be summarily rejected.

[Signature page to follow]

                                        Respectfully submitted,

                                        TRUSTEES OF THE COLLEGE OF THE HOLY CROSS,

                                        By its Attorney,

                                        */s/ Joseph L. Bierwirth, Jr.*
                                        Joseph L. Bierwirth, Jr. (#BBO 564071)
                                        HEMENWAY & BARNES LLP
                                        75 State Street, 16th Floor
                                        Boston, MA 02109
                                        (617) 227-7940
                                        jbierwirth@hembar.com

Dated: July 26, 2024