## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CORNELIUS B. PRIOR, JR.,

        Plaintiff,

v.

TRUSTEES OF THE COLLEGE OF THE
HOLY CROSS,

        Defendant.

Case No. 4:23-cv-40116

## DECLARATION OF JOSEPH L. BIERWIRTH, JR. IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL MEDIATION AND ARBITRATION, TO APPOINT A MEDIATOR AND ARBITRATOR, AND TO STAY FURTHER PROCEEDINGS

I, Joseph L. Bierwirth, Jr., hereby declare under the pains and penalties of perjury:

1. I am an attorney licensed to practice law by the Supreme Judicial Court of the
   Commonwealth of Massachusetts. I am presently a partner at the law firm Hemenway
   & Barnes LLP in Boston, Massachusetts.

2. In good faith efforts to resolve the parties' differences in advance of filing the
   Defendant's Motion to Compel Mediation and Arbitration, to Appoint a Mediator and
   Arbitrator, and to Stay Further Proceedings (the "Motion"), I exchanged multiple
   emails and letters with counsel for the Plaintiff setting forth the Defendant's position
   on the issues raised in the Motion. For example, over the course of the last six
   months, I sent six separate letters dated May 1, 2023, June 20, 2023, September 5,
   2023, September 21, 2023, September 22, 2023, and September 28, 2023. Each of
   these letters noted that the Agreement between Mr. Prior and the College of the Holy

1

Cross contained a binding mediation/arbitration provision and demanded that Mr. Prior engage in these processes. Copies of the letters are attached hereto. Of note, the last letter mentioned was not appended to Mr. Prior's opposition papers.

3. I also had multiple conversations with counsel in an effort to resolve or narrow the issues raised in the Motion. The most recent telephone conference occurred on September 26, 2023, just six days prior to filing the Motion. During this telephone conference Mr. Prior's counsel again stated his position that Mr. Prior rejected the College's request to mediate or arbitrate.

I hereby declare, under the pains and penalties of perjury, that the foregoing averments are true and correct. Executed this 7th day of November, 2023, in Boston, Massachusetts.

Joseph L. Bierwirth, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2023, I filed the foregoing document using the CM/ECF system, which sent notification of such filing to counsel of record in this matter.

/s/ Joseph L. Bierwirth, Jr.
Joseph L. Bierwirth, Jr.

2

# EXHIBIT A



75 State Street
16th Floor
Boston, MA 02109-1466
*t* 617 227 7940
*f* 617 227 0781
www.hembar.com

Joseph L. Bierwirth, Jr.
Direct Dial (617) 557-9728
jbierwirth@hembar.com

May 1, 2023

Trustees

Counselors at Law

**BY EMAIL**
Steven M. Cowley, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110
*SMCowley@duanemorris.com*

Dear Steve:

In your letter dated April 4, 2023, you requested a copy of the Pledge Agreement executed by Mr. Prior and the College of the Holy Cross dated February 28, 2014. We provided a copy of the same, which sets forth the respective duties and obligations of Mr. Prior and the College.

Our firm has been engaged by the College to provide legal advice in connection with the Pledge Agreement. Our immediate goal is to determine whether we can reach a common understanding as stated in the Paragraph 10 of the Agreement, which determines when mediation is undertaken. Mr. Prior and the College agreed to mediation if an issue arose relating to "whether any conditions for making payments described in Paragraph 6 of the Agreement has been satisfied" if the question "cannot be settled through direct discussions." Therefore, we have been seeking to confirm your view whether Mr. Prior and the College can reach a mutual understanding as to whether such pre-conditions, as stated in Paragraph 6, have been satisfied through discussion.

We intend no disrespect to Mr. Prior by seeking to follow Paragraph 10 of the Agreement. There are many other topics that are deeply meaningful and important to Mr. Prior and that we recognize can and should be civilly discussed—for example, the rescheduling of the Knights concert. However, if you believe direct discussions of the Paragraph 6 conditions will not lead to a common understanding, please let me know, and we can work together to schedule a mediation. We do not consider it necessary or advisable to engage in "discovery" without the aid and guidance of a skilled professional mediator in order to reach that understanding.

Please let me know your thoughts at your earliest convenience.



Steven M. Cowley, Esq.
May 1, 2023
Page 2

Sincerely yours,

*Joseph L. Bierwirth, Jr.*

Joseph L. Bierwirth, Jr.

cc: Elizabeth Small (*via email*)



## Hemenway & Barnes LLP

75 State Street
16th Floor
Boston, MA 02109-1466
t 617 227 7940
f 617 227 0781
www.hembar.com

Joseph L. Bierwirth, Jr.
Direct Dial (617) 557-9728
jbierwirth@hembar.com

June 20, 2023

Trustees

Counselors at Law

Michael J. Puzo
Edward Notis-McConarty
Stephen W. Kidder
Arthur B. Page
Joan Garrity Flynn
Nancy B. Gardiner
Kurt F. Somerville
Teresa A. Belmonte
Brian C. Broderick
Nancy E. Dempze
Joseph L. Bierwirth, Jr.
Dennis R. Delaney
Mark B. Elefante
Johanna W. Schneider
John J. Siciliano
Sarah M. Waelchli
M. Bradford Bedingfield
Charles R. Platt
Ryan P. McManus
Kevin M. Ellis

Michael E. Porter
John M. Stephan
Eleanor A. Evans
Jennifer Grace Miller
Donna A. Mizrahi

Robert T. Leahy
Paul M. Cathcart, Jr.
Steven L. Mangold
Meaghan E. Borys
Keirsa K. Johnson
Leni B. Nulsen
Emma Wright
Cody A. Zane
Clinton R. Prospere
Shannon M. Nelson
Dylan S. O'Sullivan

Lawrence T. Perera
Frederic J. Marx
R. Robert Woodburn
Thomas L. Guidi
Diane C. Tillotson
Charles Fayerweather

**BY EMAIL**
Steven M. Cowley, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110
SMCowley@duanemorris.com

Dear Steve:

We are in receipt of your letter dated May 15, 2023. For your consideration, I enclose the following documents:

- A string of emails including one dated March 2, 2014 from Mr. Prior transmitting his signed letter agreement with respect to his pledge to Holy Cross (the "Agreement").

- Minutes of the February 26, 2014 Meeting of the Executive Committee of the College of the Holy Cross's Board of Trustees (the "Board"), during which the Executive Committee, "unanimously approved the terms of the letter memorializing" Mr. Prior's Agreement to fund the construction and naming of a new Performing Arts Center, prior to the execution of the same by Mr. Prior two days later.

- Minutes of the May 3, 2014 Meeting of the Board, which Mr. Prior attended as a trustee, including a Board vote accepting the February 26, 2014 Executive Committee Meeting Minutes approval of the Agreement. Please note there is no indication that Mr. Prior abstained or was otherwise absent for that vote.

- The College's summary of the information requested by Mr. Prior which was previously provided to Mr. Prior on or about December 27, 2022. It is my understanding Board Chair Helen Boucher reviewed the summary with Mr. Prior at that time in Connecticut. Please see the last sentence of Section 8 of the Agreement with respect to income in the account.



Steven M. Cowley
June 20, 2023
Page 2

With respect to your inquiry regarding the Knights Orchestra, I can confirm that the College has contracted for their performance to occur on May 3, 2024. A celebration of the Prior Performing Arts Center is anticipated to occur contemporaneously.

Paragraph 10 of the Agreement is specific to whether the payment conditions set forth in Paragraph 6 of the Agreement have been satisfied. Paragraph 10 of the Agreement requires the parties to endeavor to settle any disagreement with respect to whether payment conditions set forth in Paragraph 6 have been satisfied by mediation.

Please offer your suggestions for a professional mediator and provide dates of availability for a mediation. If you prefer arbitration, we will also consider that option.

There is substantial documentation that the Agreement exists, and we are following its terms by proposing mediation or arbitration. Alternatively, if your client has a suggestion for an amendment to the Agreement to resolve the disagreement subject to Paragraph 10, please propose it.

Sincerely yours,

Joseph L. Bierwirth, Jr.



From: **George, Ellen** <egeorge@holycross.edu>

Date: Mon, Mar 3, 2014 at 12:56 PM
Subject: Fwd: Signed Gift Agreement
To: Dorothy Hauver <dhauver@holycross.edu>, Scott Merrill <smerrill@holycross.edu>, Charles Weiss <cweiss@holycross.edu>

Good afternoon,

Mike wanted me to let you know that it is a done deal we can proceed!

... Ellen

---------- Forwarded message ----------
From: **Lochhead, Michael** <mlochhea@holycross.edu>
Date: Mon, Mar 3, 2014 at 12:54 PM
Subject: Fwd: Signed Gift Agreement
To: Ellen George <egeorge@holycross.edu>

---------- Forwarded message ---------
From: **C B. Prior Jr.** <CBPriorJr@atni.com>
Date: Mon, Mar 3, 2014 at 10:03 AM
Subject: Signed Gift Agreement
To: "Michael J. Lochhead" <mlochhea@holycross.edu>

Hello Mike,

Attached is the signed copy of the gift agreement.

Thanks,

Neil

------------------------------------------------------------------
Michael J. Lochhead
Vice President for Administration & Finance

**COLLEGE OF THE HOLY CROSS**
One College Street
Worcester, MA 01610
Tel  (508) 793-2327
Fax  (508) 793-2362
Email  mlochhea@holycross.edu
-----------------------------------------------------------------------

--

*Ellen C. George*
*Executive Assistant*
*Office of Administration and Finance*
*College of the Holy Cross*
*Worcester, MA 01610*
*P:  508.793.2365*
*F:  508.793.2362*
*email - egeorge@holycross.edu*

**COLLEGE OF THE HOLY CROSS**
**WORCESTER, MA**

**Minutes, Meeting of the Executive Committee**

**February 26, 2014**

A meeting of the Executive Committee of the Board of Trustees of the College of the Holy Cross was held at 8:00 AM on February 26, 2014 in the President's Office. Rev. Philip L. Boroughs, S.J. and Vincent F. O'Rourke Jr. were present in the President's Office, Fenwick 119. Kevin Condron (Chair), Mary Murphy Westover, John Mahoney, Jr. and Ronald Amiot, S.J. were present by telephone.

1. Father Boroughs announced that Amy Wolfson, Associate Dean for Faculty Development, was leaving the College to accept the position of Vice President for Academic Affairs at Loyola University of Maryland.

2. Father Boroughs advised the Committee that the Faculty Assembly had passed a resolution requiring the use of external review letters in the tenure process.

3. Father Boroughs reported that the Search Committee for the new Vice President of Academic Affairs and Dean of the College had met to review the completed interviews of the four finalists and that the President would make a decision shortly.

4. The Executive Committee unanimously approved the terms of the letter memorializing the terms of Neil Prior's generous gift to the College.

The meeting adjourned at 8:45 a.m.

Respectfully submitted,

Vincent F. O'Rourke, Jr.
General Counsel

Page 38 of 216

/hjc

**COLLEGE OF THE HOLY CROSS**
**WORCESTER, MA**

**Minutes, Meeting of the Board of Trustees**
**May 3, 2014**

A Meeting of the Board of Trustees of the College of the Holy Cross was held on Saturday, May 3, 2014 in the Hogan Campus Center Ballroom at the College of the Holy Cross, Worcester, MA. Chairman P. Kevin Condron called the meeting to order at 8:30 a.m., with a quorum present.

**Members Present:** R. Amiot, S.J., J. Baldovin, S.J., M. Barrett, P. Boroughs, S.J., T. Carey, P.K. Condron, S. Curtin, M. Daniels , W. Doran, S. Feitelberg, M. Ferre Rangel, A. Fink, J. Fisher, K. FitzGerald, S.J., J. Gartland, S.J., B. Kelley, K. LaCroix, P. Lam, J. Mahoney, A. McElaney-Johnson, J. Mooney, R. Moriarty, A. O'Brien, R. Patterson, N. Pelletier, C. Prior, B. Semple, P. Smith, N. Taylor, W. Teuber and M. Westover.

**Members Absent:** D. Grain, M. Greene, B. Linnane, S.J., M. Massa, S. J., R. Morrison and D. Winn.

**Staff Present:** T. Barlok, J. Corr, M. Freije, P. Harman, S.J., D. Hauver, T. Jarry, M. Lochhead, V. O'Rourke, J. Peterson, and F. Vellaccio. [And beginning at 10:15 a.m., A. McDermott]

1. Father Boroughs opened the meeting with a prayer.

2. Mr. Condron acknowledged and thanked Mr. Smith, Ms. Winn and Ms. Lam for their service to the Board.

3. **VOTE:** Approval of the minutes of the January 25, 2014 Board meeting was **moved, seconded,** and the minutes of the January 25, 2014 Board meeting were **approved.**

4. **VOTE:** Acceptance of the minutes of the Executive Committee meetings of January 24, 2014, February 26, 2014 and April 2, 2014 was **moved, seconded**, and **approved.**

5. President's Report: Fr. Boroughs
   Fr. Boroughs thanked Mr. Condron for his remarkable 21 years of leadership and thanked Mr. Smith, Ms. Lam and Ms. Winn for their service and commitment to the College. He introduced Dr. Freije as the College's new Vice President for Academic Affairs and Dean of the College. Fr. Boroughs also shared that there have been many changes in leadership at Jesuit universities with some universities appointing Jesuits to the presidency and others appointing lay individuals.

Title IX

Because the issue of student sexual assault on college campuses has received a great deal of media and government attention, Fr. Boroughs provided the Board with an overview of the College's work addressing sexual misconduct and Title IX issues and processes:

- In 2002, the College completely revised its Sexual Misconduct Policy and has reviewed and revised it as needed since then. The Student Life Council vets and endorses the reviews. The College's policies and practices have been a model for many schools and the College has received national recognition for effectively addressing complaints.
- Student Affairs works closely with Bill Conley, the College's Title IX coordinator, the College's general counsel, and when necessary, the College's insurance provider to ensure compliance and appropriate risk management.
- The College has worked diligently to create an environment in which individuals feel safe bringing forward complaints. The College also has an anonymous third party reporting process.
- The College has been educating and training a large number of students. 98% of first year students received bystander training last fall and this training will continue and is made possible through a $500,000 Department of Justice ("DOJ") grant that the College shares with Clark, WPI and Assumption. This grant enables training for students, public safety investigators and hearing board members. The Sexual Assault, Facts, Education and Response team ("SAFER"), established at the College five years ago, oversees education and outreach efforts and helps to administer the grant.
- Training has been provided to coaches, athletic teams, student clubs and organizations, and peer educators and leaders. The College will continue to expand the training to include all members of the campus community.

Fr. Boroughs asked Ms. Peterson to provide further background. Ms. Peterson reported that Holy Cross has been ahead of the curve as new federal guidance has been issued over the past few years. Ms. Peterson highlighted the College's anonymous third party reporting system on campus and explained how this created an increase in our Clery report numbers because more complaints/allegations are raised through this mechanism. When a student files a complaint, she/he receives counseling, information on resources, and information on College procedures for bringing and hearing complaints and how to bring a complaint into a legal process. There are times when a student does not want to go forward with a complaint, but the College has the obligation under Title IX to move ahead with an investigation.

Other Updates
Fr. Boroughs updated the Board on other campus events and happenings:
- Chris Matthews was on campus to discuss his new book.
- Francine Rosado Cruz '94, the Diversity officer for Microsoft spoke about globalism in the marketplace to the Ciocca Office of Entrepreneurship and the Diversity Leadership Team.

- Ed Augustus, Interim City Manager, will return to his position at the College in late fall.
- Holy Cross Cares Day was held this spring. Over 200 students and college employees volunteered in the city. Next weekend is the "Working for Worcester" weekend for which senior Jeffrey Reppucci has organized over 1000 volunteers from the campus and other colleges, and business volunteers to work on schools, playgrounds, and other centers.

Form 990
Fr. Boroughs called to the Board's attention their responsibility to review the College's annual tax forms before they are filed and directed the Board to the IRS 990 on the BoardEffect portal.

January 2015 Board Retreat
January 22 – 25, 2015 will be the dates of a Board retreat in Florida, at which the Board will discuss the value proposition of the liberal arts and Holy Cross and how the College can enhance its value proposition. The administration is working out details and will share more information as it becomes available.

6. Revision to the By-Laws:  Mr. Mahoney, acting on behalf of Mr. Morrison, chair of the Trusteeship Committee, presented three by-law revisions to the Board. He explained that the first was a set of scrivener's changes which were discussed at the January meeting of the Trusteeship Committee and are now before the Board for a vote; the second was a revision to Article XVI, Non-Discrimination Statement, the language of which had not been presented to the Board previously and was not before the Board for a vote today, but would be brought forward for a vote at the September Board meeting; and the third revision would change the term of the chair from six years to four years and was presented at the January Board meeting and is in front of the Board today for a vote.

**VOTE:** Revision to By-Laws, scrivener's changes

The adoption of the scrivener's changes to the by-laws as set forth in the Board materials was **moved, seconded**, and **approved**.

**VOTE:** Revision to By-Laws, Term of Chairperson

The adoption of the revision to the by-laws changing the term of the chairperson from six years to four years, as set forth in the Board materials, was **moved, seconded,** and **approved.**

7. Finance Resolutions: Mr. Lochhead, Vice President for Administration and Finance, presented to the Board two resolutions which the Finance Committee reviewed at its meeting the day prior, May 2, 2014, and voted to recommend to the full Board.

**VOTE:** Finance Resolution #1: Line of Credit

The resolution before the Board regarding the renewal of the College's line of credit was **moved, seconded** and **approved**.

**VOTE:** Finance Resolution #2: Issuing Debt and Reimbursement

The resolution before the Board regarding the issuing of debt and reimbursement of expenses was **moved, seconded, and approved.**

8.  Authorization for the Granting of Bachelor and Honorary Degrees: Fr. Boroughs asked for a motion to authorize the granting of baccalaureate degrees to those students certified as qualified by the registrar of the College and honorary degrees for Jonathan Edward Favreau, Rochelle M. Bard, and Rev. John W. Padberg, S.J.

**VOTE:** The authorization for the granting of baccalaureate degrees and honorary degrees was **moved, seconded, and approved**.

9.  Report of the Committee on Academic Affairs Committee:  Ms. Taylor, Chair of the Academic Affairs Committee

The Committee has addressed and discussed many issues, including the five-year review of Montserrat. The Committee is pleased that Margaret Freije, now Vice President for Academic Affairs and Dean of the College, had brought through the faculty statute process the issue of outside letters in tenure cases. Ms. Taylor acknowledged that the administration was aware of and attentive to issues regarding faculty compensation.

Ms. Taylor asked Dr. Freije to update the Board on the work of the academic affairs division. Dr. Freije shared a presentation highlighting this work and articulated a goal of the College to be delivering the highest quality Jesuit, liberal arts education in order to prepare students to the needs of the 21st century world and to keep costs down.

Dr. Freije suggested that the primary aim of Jesuit education was to develop in our students a "well-ordered passion," a phrase and concept borrowed from Dean Brackley, a Jesuit at the University of Central America. Developing this "well-ordered passion" requires that the College develop habits and shape attitudes in its students and that at Holy Cross this will mean "thinking about the content, skills and experiences we can offer to our students and the opportunities that highlight the linkages between content, skills and experiences." It will mean "thinking about the relationship between the curriculum and the co-curriculum, thinking about the relationship between the academic year and the summer and thinking about how we engage faculty, professional staff and alumni in these efforts."

Dr. Freije shared a set of slides highlighting the College's rigorous academic program, the excellent faculty and the strong relationships between faculty and students, various independent learning opportunities available to students, and the co-curricular programs that link liberal arts education with the world beyond Holy Cross.

Dr. Freije shared work and initiatives that the College should celebrate, namely new classroom technologies; active learning pedagogies that make explicit the connections between content, skills and experiences; new initiatives from Ciocca Office, specifically a new collaboration with Fullbridge to offer integrated programs for students in classes of 2016 and 2017; and student independent projects, including student development of new apps and two Davis Projects for Peace grants awarded to two Holy Cross juniors to construct a community center in Peru.

Dr. Freije also highlighted opportunities for growth where the College needs to:
- Provide more independent learning opportunities.
- Provide more opportunities to connect theory with practice.
- Work with students on the "meta-cognitive" level so they will be able to understand and reflect on the connections between what they are doing in the classroom and what they might expect to have to do in the world beyond Holy Cross. The Vocare initiative that is being led by Ms. Peterson will help facilitate this.
- Use the space around the academic year to build other skills and provide additional opportunities.
- Build a culture and create spaces that encourage and support flexibility, creativity and risk-taking.

Next steps include:
- The creation of new semester programs: New York semester to be launched in fall 2015 that will involve students interested in finance and in the arts, a semester "Here" program that would allow students to complete internships in Worcester or Boston, and take two courses at Holy Cross.
- A review of the study abroad program with goal of creating more study abroad opportunities.
- Continued initiatives in development of new courses and new active learning pedagogies, e.g., Course Development Fellowships.
- Vocare initiative; rethinking advising and its connections to discernment and mentoring.
- Space upgrades: creating spaces to facilitate collaboration.
- Infusion of creativity and risk-taking through curriculum and pedagogies through initiatives and courses such as:
  - The Arts Transcending Borders initiative, ("ATB@HC") funded by the Mellon foundation and designed to build collaborations between the arts departments and between the arts and other disciplines. Each year the initiative will focus on a theme and will engage faculty and visiting artists in creating a rich array of courses and arts programs that will address the theme. The theme for 2014-2015 is *Time, Memory and Identity*.
  - The CreateLab course in which eight faculty from theatre, music, economics, sociology, psychology, and studio art will work with 80

students, who will work in team on a variety of creative projects in the pit and a revamped O'Kane lab – a mini-beehive.
  o  Our first Visiting Artist – Cristina Patos, a Galician bagpiper, concert pianist, doctorate in musicology, member of Yo Yo Ma's Silk Road Ensemble and the Silk Road Cultural Entrepreneurship program.

Ms. Patos performed at the ATB@HC kickoff event in April and Dr. Freije closed her presentation with a video of this performance.

10. Report of the Buildings and Grounds Committee:  Ms. Fink, Chair of the Buildings and Grounds Committee
    • Contemplative Center: The College filed a site plan with the town of West Boylston.
    • Performing Arts Center: RFPs for architectural work have been shared with 11 firms; eight of those have submitted responses, and a committee will choose three firms as finalists to present their design ideas to the College.

*Nathan Pine, the College's Director of Intercollegiate Athletics joined the meeting.*

    • Hart Center and Fieldhouse:  Mr. Lochhead and Mr. Pine summarized the process of how the College arrived at the current proposal for the Hart Center and the field house. The field house renovation will support recreation/wellness for all students and create larger spaces than now available. The College needs to find alternative space ("swing space") for varsity athletes to practice when the field house is under construction. Mr. Pine explained the Hart Center addition, the size and the ceiling height changes.

      In response to a question regarding swing space for the field house, Mr. Pine explained that the College is evaluating the feasibility of installing a permanent bubble on Freshman Field, which is a flood plain. If this was a viable option, the College could renovate the field house before any construction or renovation at the Hart Center. A bubble might also be a solution for track and field hockey. If the bubble is not viable, the College will look at off campus options.

      Mr. Condron will be talking with the administration on how to integrate the Finance Committee into an athletic facility conversation.

11. Campaign Update: Ms. Barlok, Vice President for Development and Alumni Relations
Cash flow for FY 14 was $119.4 million. The goal for FY 14 was $110-120 million. The goal for FY 15 is $175 – 185 million. Ms. Barlok shared the campaign tagline of "Become More." Fr. Boroughs discussed Magi's and the meaning of Magis as making

choices that reflect God's love in the world. Ms. Barlok shared that the fall issue of the Holy Cross magazine highlighted Magis and its meaning.

*The Board adjourned for a short break at 10:00 a.m.*
*The Board re-convened at 10:15 a.m.*
*Director of Admission, Ann McDermott, joined the meeting.*

12. Admissions: Dr. Vellaccio, Senior Vice President, and Ms. McDermott

Applications were down 25% from 2013 (7111 to 5302). Ms. McDermott explained that the students who applied were proportionally of the same caliber as students who applied in the past and the accepted pool of students did not look much different than in other years. In terms of yield, we are currently at 785, but we will likely be at 800 and there will be melt over the summer. The yield is 33% but will be closer to 34-35%, an increase over prior years. The applicant pool, although smaller, was more serious about Holy Cross. Students who were not really interested did not end up applying and those that applied were very interested in Holy Cross as shown by the increase in yield rate.

Common Application ("Common App") was revamped and simplified to be as generic as possible this year and it required institutions to add college-specific sections. The loss of a writing piece was critical for Holy Cross. The admissions office wanted evidence of an applicant's writing skills and thus chose to include a writing supplement. Williams, Amherst, Colgate and Colby are using writing supplements.

The Holy Cross situation was not similar to that of Boston College a few years ago because the Holy Cross was responding to changes in the Common App and its questions asked for shorter (250 word) responses. The admissions office was surprised to see a drop in applications after a fall of huge engagement. Looking at other schools, it appears that anything extra required of students created a stumbling block for applicants because of glitches in the Common App this year. Schools that dropped the supplement had an increase in applications. Guidance counselors reported that if a student were really interested in a school, he/she would apply, but if not that interested, would not pursue an application if it required more effort/work. Before this year, it was easy to apply to Holy Cross as no test scores were required and there was no extra question.

The Common App is changing again and the admissions office will be in conversation with the Executive Team in determining its strategy with respect to the application and questions.

In response to a question, Ms. McDermott expressed the opinion that the question itself was not part of the issue as applicants could have chosen not to respond.

Mr. Mahoney suggested that the situation provided an opportunity to dig deeper and do research on who is applying and why they are applying. Ms. McDermott said that the office always does research regarding who doesn't come and who applies. Mr. Mahoney also suggested that the College should be responsive and look at creating demand.

Mr. Kelley, who is involved in an initiative regarding college and data around college metrics, said that generally colleges have seen dramatic increases in application because of the Common App itself simplifying the process of applying to college, and influx of international applications and an increase in the number of schools to which a student applies. Colleges that added questions saw a drop in applications. Schools with a great brand, however, can do anything. Mr. Kelley cautioned that schools need to be careful about question(s) it adds.

Dr. Vellaccio reported that upon a preliminary reading, the same percentage (50%) of students in the incoming class is receiving institutional grants as in prior years. There is a better socio-economic mix in ALANA students and international students are all full pay.

Questions and comments from the trustees included the following:
- What is the plan going forward?
- It is possible that the drop in applications is not just because of the common app but could be result of a multitude of factors.
- Maybe the College needs to bring in someone to review what happened.
- Liberal arts colleges are generally out of favor right now in the media.

Ms. McDermott referred to the goals outlined in the materials she provided to the Board. The admissions discussion concluded with a conversation regarding the recruitment of international students. Dr. Vellaccio is chairing a committee on the recruitment of international students ("CORRIS").

The Board went into Executive Session to discuss honorary degree candidates and to hear a report from the Trusteeship Committee.

The meeting was adjourned at 12:00 noon.

Respectfully submitted,

Jane E. Corr, Secretary to the Board

Approved on: 9-6-14

Jane E. Corr, Secretary to the Board

**Additional information 12/22/22:**

**Use of Funds Received to Date:**

Previous payments received on this pledge were used as of March 3, 2020.  The following shows a rollforward of cash received, as impacted by gains/losses on sale of stock, interest earned and applied to the project.

| | Through 3/3/2020 |
|---|---|
| **Beginning Balance** | - |
| | |
| Gift Activity: | |
| Pledge Payments | 17,989,558 |
| Gain/(Loss) on Sale of Stock | (428,399) |
| Expenses on Sale of Stock Gift | (48,777) |
| Subtotal | 17,512,382 |
| | |
| Project Disbursements | (18,089,053) |
| Interest Earned | 576,671 |
| Subtotal | (17,512,382) |
| | |
| **Ending Balance** | (0) |

**Interest Credited:**

The College was required to maintain funds separately and apply interest.

The average cash balance (gift proceeds less project expenses) was approximately $9.5M between 2014 and 2020.  Interest credited totaled $576,671.

There have been questions on why not invested in the Endowment or in an account like the Endowment.  The Endowment is invested for long-range returns.  The Endowment is optimized to support a 4.5-5% spending rate over a long term.   We take long-term, illiquid bets not consistent with significant inflows and outflows.  We knew that we'd be spending the entire proceeds of this gift in less than five years.  It would not have been prudent or consistent with College policy or practice to invest these funds in the Endowment.

While the 10-year return of the S&P does indeed hover around 11.1%, this ignores several important points. First, interim volatility. In 2022, for example, the return was -18.5%.  This was not a buy and hold investment; we were (and are) looking to use proceeds in their entirety to support an active project, and trying to time purchases and sales in the equity market would be imprudent. As an aside, even the 10-year number quoted is a simple return; converting this to a compound annual growth rate drops to 8.1%.

2

Section 8 of the agreement requires the College to apply interest "to the costs of designing, financing, constructing the physical facilities" of the Center and "for the enhancement of the Center." Section 8 expressly states that the interest *does not reduce* the Donor's $25M commitment.

Excerpt from the gift agreement stating this:

8. The College shall deposit the funds pledged hereunder and the shares (or the proceeds from the sale of any shares) pledged hereunder in a segregated account, the income and principal of which shall be expended exclusively to pay the costs of designing, financing, constructing, and equipping the physical facilities of the Center. The $5,000,000 previously advanced by the Donor for this project shall be placed in this account upon execution of this agreement by the parties. The income from the account will not reduce the Donor's obligation to pay or transfer shares with a value of $25 million, but shall be used for enhancement of the Center.

**Gains/Losses on Sale:**

Under the gift agreement, the College agreed to reduce future pledge payments for gains on sales of ATNI stock, and Neil Prior agreed to make up any losses on the sale of ATNI stock. All decisions on the timing of the sales of stock are subject to an agreement between the College and Morgan Stanley dated June 5, 2014.

The College has been in a "net loss" on the sale of stock over the course of this agreement of over $400K, and did not request that he make up any deficiencies.

7. The Donor anticipates funding all or part of the four additional payments described in Paragraph 6 by gifting shares of stock of Atlantic Tele-Network, Inc. (ATNI). For purposes of crediting the value of any shares so gifted against the funding obligations set out above, the shares gifted (the "Gifted Shares") will be valued at the mean of the high and low market price on the day of gift ("Gift Date"). With respect to any Gifted Shares, the College refers to such value as the respective "Date of Gift Value". The College will notify the Donor in writing of the net amount of proceeds realized from sales of any Gifted Shares to the College to meet any of the funding obligations set out above (the "Net Amount"). If the Net Amount is greater than the Date of Gift Value, the amount of excess will be credited to the next payment or payments to be made by the Donor under the Agreement. If the Net Amount is less than the Date of Gift Value, the Donor agrees to transfer additional property to the College in an amount equal to the difference between the Net Amount and the Date of Gift Value. The parties acknowledge that the timing of the sale of any Gifted Shares by the College is entirely a decision to be made by the College. For the College's information, the Donor has obtained an undertaking from ATNI for the benefit of the College that ATNI will provide a copy of the ATNI anti-insider trading policy the ("Policy") promptly following the date of this Agreement and will promptly inform the College of any changes to the Policy

We recently received a request as to whether the gain on the $3M Hart Luth Athletic Complex Project stock gift from October 2015 could be applied to the project. This gift was liquidated with a gain of $51,390. Although we could allocate the gain to the project, it does not change the outstanding pledge amount.

3

Other from NP email dated 12/13/22:

- Your schedules do not mention the $150,000 I donated for an original composition by Osvaldo Golijov to commemorate the opening of the PAC.
  *Unrelated to pledge amount outstanding*

- The schedules also do not reflect my agreement to redirect the annual earnings of my Father Maurice F. Reidy, SJ, Trust to the PAC. Please provide the current value of the trust corpus which was not mentioned in the assignment I executed in June 2022.

The market value of the Rev. Maurice F. Reidy, J.J. Composer in Residence was $3,246,861.90 at 6/30/2022.

Note that this was one of 3 endowed funds established by the original Trust. Those were as follows:

|  | MARKET VALUE AT 6/30/2022 |
|---|---|
| REV. MAURICE F. REIDY, S.J. COMPOSER IN RESIDENCE (Prior) | 3,246,861.90 |
| REV. J. GERARD MEARS, S.J. PROFESSORSHIP IN FINE ARTS  (Prior) | 2,399,381.61 |
| STEPHEN J. PRIOR PROFESSORSHIP IN HUMANITIES | 2,598,333.89 |

The composer in residence position was originally a professor of history. It was amended in 2022 by an executed addendum at which time Neil agreed to the substitution to meet the conditions of the designation to enable the College to engage Osvaldo Golijov in the position. The College relied upon this executed authorization to engage Golijov as composer in residence for five years.

4

**Prior Performing Arts Center Gift Reconciliation Executive Summary**

12/5/22 information provided to NP:

Gifts were received as follows:

|  | At Gift Date |
|---|---|
| Cash 12/27/12 | $2,000,000 |
| Cash 12/30/13 | $2,000,000 |
| Cash 12/31/13 | $1,000,000 |
| Stock 4/2/14 | $673,900 |
| Stock 4/2/14 | $226,145 |
| Stock 4/2/14 | $1,766,755 |
| Cash 12/29/14 | $2,320,000 |
| Stock 7/20/15 | $2,123,100 |
| Stock 2/23/16 | $3,134,600 |
| Stock 7/26/16 | $2,745,058 |
| Total gifts per Holy Cross | $17,989,558 |

**Reconciliation to NP 11/23/22 email**

| Total per email | $18,740,678 |
|---|---|
| Remove Hart-Luth Gift | ($3,054,720) |
| Add in Cash gift 12/29/14 | $2,320,000 |
| Difference in stock value | ($16,400) * |
| Total per HC | $17,989,558 |

*The gift agreement indicates the value at the date of gift will be based on the mean of the high-low stock price.

1


## Hemenway & Barnes LLP

75 State Street
16th Floor
Boston, MA 02109-1466
t 617 227 7940
f 617 227 0781
www.hembar.com

Joseph L. Bierwirth, Jr.
Direct Dial (617) 557-9728
jbierwirth@hembar.com

September 5, 2023

**BY EMAIL AND FIRST CLASS MAIL**
Steven M. Cowley, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110
SMCowley@duanemorris.com

Trustees

Counselors at Law
Michael J. Puzo
Edward Notis-McConarty
Stephen W. Kidder
Arthur B. Page
Joan Garrity Flynn
Nancy B. Gardiner
Kurt F. Somerville
Teresa A. Belmonte
Brian C. Broderick
Nancy E. Dempze
Joseph L. Bierwirth, Jr.
Dennis R. Delaney
Mark B. Elefante
Johanna W. Schneider
John J. Siciliano
Sarah M. Waelchli
M. Bradford Bedingfield
Charles R. Platt
Ryan P. McManus
Kevin M. Ellis

Michael E. Porter
John M. Stephan
Eleanor A. Evans
Jennifer Grace Miller
Kevin S. Freytag
Donna A. Mizrahi
Paul M. Cathcart, Jr

Robert T. Leahy
Steven L. Mangold
Meaghan E. Borys
Keirsa K. Johnson
Leni B. Nulsen*
Cody A. Zane
Clinton R. Prospere
Shannon M. Nelson
Dylan S. O'Sullivan

Lawrence T. Perera
Frederic J. Marx
R. Robert Woodburn
Thomas L. Guidi
Diane C. Tillotson
Charles Fayerweather

*Not Admitted in MA

**Confidential Settlement Communication Subject to Fed. R. Evidence 408**

Dear Steven:

In the event of a rejection of the settlement offer provided to you today, this will serve as an additional formal demand upon Cornelius B. Prior, Jr. to comply with the provisions of the Pledge Agreement of February 28, 2014, between Mr. Prior and the Trustees of the College of the Holy Cross (the "College") pursuant to their agreement to resolve disputes by mediation. The mediation will be conducted by an agreed upon mediator in Worcester, Massachusetts, or some other agreed upon location.

The College and Mr. Prior have exchanged multiple demand letters and engaged in multiple conversations in an endeavor to resolve their dispute but have been unable to do so. As a result, the matter must be submitted to a formal mediation process before a trained, experienced mediator at which the parties will in good faith attempt to reach a mutually acceptable resolution to their dispute. Under the plain terms of the Pledge Agreement, such mediation must occur before arbitration or litigation can commence. The College is in receipt of correspondence dated June 4, 2023 from you enclosing a draft Complaint and threatening to file the Complaint in the United States District Court. The filing of such Complaint, any lawsuit, or any claim for arbitration, would constitute a further breach by Mr. Prior of the Pledge Agreement, and the College will pursue all rights and remedies available to it.

In the event of a rejection of the settlement offer provided to you today, the College will provide the names of proposed mediators within ten days.



**Hemenway & Barnes** LLP

Steven M. Cowley, Esq.
September 5, 2023
Page 2

75 State Street
16th Floor
Boston, MA 02109-1466
t 617 227 7940
f 617 227 0781
www.hembar.com

Sincerely,

Joseph L. Bierwirth, Jr.

Trustees

Counselors at Law



Joseph L. Bierwirth, Jr.
Direct Dial (617) 557-9728
jbierwirth@hembar.com

75 State Street
16th Floor
Boston, MA 02109-1466
t 617 227 7940
f 617 227 0781
www.hembar.com

September 21, 2023

**BY EMAIL AND FIRST CLASS MAIL**
Steven M. Cowley, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110
SMCowley@duanemorris.com

Trustees

Counselors at Law

Re:    **Demand for Mediation and Arbitration**

Dear Steven:

As you know, I received a copy of Mr. Prior's Complaint as filed in the U.S. District Court. The filing of the Complaint constitutes a breach of the Pledge Agreement of February 28, 2014, between Mr. Prior and the Trustees of the College of the Holy Cross (the "Pledge Agreement"). Under the plain terms of Paragraph 10 of the Pledge Agreement, mediation must occur before litigation can commence. If the parties cannot resolve their differences by way of mediation, Paragraph 10 mandates that such issues be resolved by way of arbitration.

As you also know, the College has previously requested that your client engage in mediation, most recently by way of my September 5, 2023 letter. Consider this correspondence an additional formal demand upon Mr. Prior to comply with the provisions of the Pledge Agreement to resolve his disputes by mediation. Should he refuse to engage in mediation, the College hereby formally requests that he agree to dismiss his Complaint pursuant to Fed. R. Civ. P. 41(a) and arbitrate any claims, as set forth in the parties' contract.

If I do not receive a definitive affirmative response from you by close of business September 25, 2023, we will understand that to mean Mr. Prior refuses to engage in mediation and arbitration of his claims.

Sincerely,

Joseph L. Bierwirth, Jr.

# Hemenway & Barnes LLP

Joseph L. Bierwirth, Jr.
Direct Dial (617) 557-9728
jbierwirth@hembar.com

75 State Street
16th Floor
Boston, MA  02109-1466
t 617 227 7940
f 617 227 0781
www.hembar.com

September 22, 2023

Trustees

Counselors at Law

**BY EMAIL AND FIRST CLASS MAIL**

Steven M. Cowley, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110
SMCowley@duanemorris.com

   Re: **Demand for Mediation and Arbitration**

Dear Attorney Cowley,

  I received your letters of September 15 and September 21.  As we have made clear through numerous communications and discussions to date, the College's position is that all of the parties' present disputes, including the issues raised in Mr. Prior's federal court Complaint, fall squarely within the mediation and arbitration provision set forth in Paragraph 10 of the parties' Pledge Agreement.

  For example, Mr. Prior specifically alleges, in a section of his Complaint purporting to describe the "Nature and Summary" of the action, that the College "violated its agreement to pursue prompt and continuous development of the PAC," a condition expressly set forth in Paragraph 6 of the Pledge Agreement.  Although the College categorically rejects this claim for reasons well known to Mr. Prior given his position on the Board of Trustees during the period in question, it is a claim that is clearly reserved for mediation and arbitration under Paragraph 10 of the Pledge Agreement.  Additionally, Mr. Prior seeks a judicial declaration that the College's alleged violations of the conditions set forth in the Pledge Agreement relieve him of any further payment obligations under Paragraph 6 thereof.  This claim, too, is clearly reserved for mediation and arbitration under Paragraph 10 of the Pledge Agreement.  These are just two examples of issues raised by the Complaint that are required to be mediated and arbitrated; there are many others that we will address in due course if we are forced to file a motion to compel mediation and arbitration.

  To the extent you believe certain questions posed in your letters have not been adequately answered, we reiterate the College's view that those questions are properly addressed through the mediation and arbitration processes required by the parties' Pledge Agreement and/or (if necessary) a motion to compel the same, not through a tendentious letter-writing campaign that will unnecessarily drive up attorneys' fees for both of our respective clients.

1

**Hemenway**
**& Barnes** LLP

Page 2

Accordingly, we again reiterate our previously-stated demand that your client dismiss his Complaint and engage with us in the alternative dispute resolution processes contemplated in the Pledge Agreement. If we do not receive an unequivocal affirmative response to this request by close of business on Monday, September 25, we will understand that your client has rejected the College's multiple requests to comply with the mediation and arbitration provision of the Pledge Agreement, and the College will proceed with a motion to compel mediation and arbitration pursuant to 9 U.S.C. s. 4, and otherwise reserves all rights.

Sincerely,

Joseph L. Bierwirth, Jr.

**From:** Cowley, Steven M. <SMCowley@duanemorris.com>
**Sent:** Thursday, September 28, 2023 1:43 PM
**To:** Bierwirth, Joseph L. <jbierwirth@hembar.com>
**Cc:** Borys, Meaghan E. <mborys@hembar.com>; Benoit, Angela J. <ABenoit@duanemorris.com>
**Subject:** RE: [EXTERNAL] RE: Holy Cross - Request to Confer

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mr. Bierwirth,

You have not provided the requested information previously.  To the contrary, you stated that Holy Cross would not provide "discovery" outside of mediation.  Nor have you provided all of the requested information now.

Given your new position that the Holy Cross By-Laws in effect in February 2014 provided that the Executive Committee possessed the full power of the Board, please provide a copy of those By-laws.  The minutes of the May 3, 2014 Board meeting establish clearly that the full Board did not vote on the letter.  The Trustees merely approved minutes of an Executive Committee meeting, a ministerial act that did not even inform the Board of the terms of the letter agreement (from all that appears in the minutes), let alone that its approval was required or would be deemed provided by not objecting to the minutes of a meeting most Board members did not attend.  That is the reason for my long-standing request for documentation showing that the full Board of Trustees authorized the Executive Committee to vote on its behalf.  You still have not provided that documentation.  The College's current By-Laws are not relevant to the question we are trying to resolve.

It is Holy Cross's position that the requirement of approval of the full Board of Trustees was met.  It is not Mr. Prior's obligation to take a position on an issue he has no insight into.  Only to consider the College's position and decide whether he contests it, or not.  Given that he was a member of the Board of Trustees and does not recall (apparently, as you now finally acknowledge, because it did not happen) the letter agreement being provided to the Board for such a vote, he has a good faith basis to ask the question.  Holy Cross's months long run-around responding to the question has not displayed similar good faith.

This is the first we have been informed that the College now takes the position that it satisfied the condition of providing "certification by the College that it has been diligently and continuously prosecuting construction."  It is surprising to see you suggest that it has, given that the College has stated in writing that it did not **commence** construction until the summer of 2019, more than two and one-half years after the contemplated certification was to be provided.  Regardless of the timing of a certification, to Mr. Prior's knowledge, the College has never issued it and has admitted the opposite of what the College was required to certify.  You now – for the first time - say otherwise, but you ignore the multiple requests that you provide the documentation on which Holy Cross relies.

I again request that you provide a copy of the certification that you now represent the College issued, satisfying the paragraph 6 condition tied to a $5,000,000 donation that would bring the running total in that paragraph to $20,000,000.

Your suggestion that Mr. Prior is not permitted to request support for Holy Cross's position as to which it contends there is a dispute requiring mediation is incomprehensible, and displays a fundamental misunderstanding of the College's meet and confer obligation. Holy Cross's refusal to address a very simple request for documentation constituting a certification you claim was issued threatens to impose needless attorneys' fees on the parties to litigate an issue that Holy Cross can resolve without any cost or delay. All that is required is for the College to stop refusing to acknowledge and respond to the request for a document that is in hand, if it actually exists, or to admit that it does not exist, if that is the truth.

Holy Cross appears to have forgotten, or simply does not understand, its role as a fiduciary of Mr. Prior's conditional donations. Sharp-elbowed litigation tactics simply are not appropriate for such an institution in these circumstances. We urge the College to reconsider its tactics and provide the document you represent exists, or truthful information concerning the lack of the required certification.

Regards,

**Steven M. Cowley**
Partner

Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
**P:** +1 857 488 4261
**F:** +1 857 401 3090
**C**: +1 617 429 7142

SMCowley@duanemorris.com
www.duanemorris.com

**From:** Bierwirth, Joseph L. <jbierwirth@hembar.com>
**Sent:** Thursday, September 28, 2023 12:44 PM
**To:** Cowley, Steven M. <SMCowley@duanemorris.com>
**Cc:** Borys, Meaghan E. <mborys@hembar.com>; Benoit, Angela J. <ABenoit@duanemorris.com>
**Subject:** RE: [EXTERNAL] RE: Holy Cross - Request to Confer

Dear Attorney Cowley,

With respect, I have previously provided this information to you.

With respect to the approval of the Board, I direct you again to my June 20, 2023 letter, which provides:

- A copy of the Executive Committee (EC) of the Board meeting minutes approving the parties' agreement. As your client is well aware as a multiple term trustee of the

College, under the College's By-Laws in effect then and now, the EC possesses the full power of the Board between Board meetings.  Thus, the EC's approval alone was sufficient to approve the agreement per paragraph 14.

- A copy of the May 3, 2014 Board meeting minutes, at which your client was present and voted, approving the minutes of the February 26, 2014, EC meeting, which minutes expressly included the statement of approval of the agreement.

Is it Mr. Prior's position that there is no agreement in effect despite his references to it since February 2014?  If so, please state that position clearly.

The College's position is that all conditions set forth in paragraph 6 of the agreement have been fulfilled, and that the remaining balance of Mr. Prior's full $25 million pledge is due and owing.  The College's position on this point has been clear and well known to your client for nearly a year.  For example, the College requested full payment on October 11, 2022, and Board Chair Helen Boucher stated expressly that "the College has met all of its obligations and met all of the milestones of the project" in an email to your client on November 9, 2022, a copy of which you were provided as an attachment to my letter on September 5, 2023.  Moreover, your client made multiple, repeated written demands for mediation or arbitration of these issues in late 2022 and early 2023.  He would not have done so if he was unaware of the College's position or his contractual obligation to mediate and arbitrate.  Your repeated requests for information that the College has provided to you and/or your client are harassing and must stop.

My letter from the "other night," the evening of September 22, 2023, also explained the College's position regarding why the complaint alleges claims and issues that are also subject to arbitration, and provided examples to support that position.

Local Rule 7.1(a) requires "good faith" efforts to narrow issues before filing a motion.  It does not require that we spend hour after hour engaged in a letter-writing campaign of attrition to address your repeated demands that we provide information we have already provided, restate arguments we have already stated, and convince you of points of fact and law when you have made it perfectly clear that you will never be so convinced.  The time has come for the Court to hear the parties' arguments and issue a ruling.

If your client changes his mind again and wishes to proceed to mediation and arbitration, consistent with his own multiple demands for the same, please let me know right away.  Otherwise, we will proceed with our motion.

Regards,
Joe

Joseph L. Bierwirth, Jr.
Hemenway & Barnes LLP | 75 State Street | Boston, MA  02109 | (617) 557-9728 | e-mail
Website | Hemenway Trust Company

**From:** Cowley, Steven M. <SMCowley@duanemorris.com>
**Sent:** Wednesday, September 27, 2023 2:19 PM
**To:** Bierwirth, Joseph L. <jbierwirth@hembar.com>
**Cc:** Borys, Meaghan E. <mborys@hembar.com>; Benoit, Angela J. <ABenoit@duanemorris.com>
**Subject:** [EXTERNAL] RE: Holy Cross - Request to Confer

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mr. Bierwirth,

I write to confirm our discussion yesterday in which you represented that the Trustees of the College of the Holy Cross intend to file a motion to compel mediation / arbitration.

I asked you to identify the basis for a position that the College's Board of Trustees approved the February 28, 2014 letter pursuant to paragraph 14, pointing out that to date Holy Cross only documented a vote by the Executive Committee, but not the Board of Trustees itself. I repeated Mr. Prior's request to review any documentation of a vote by the Board of Trustees to determine if the parties agree or not on the question whether the letter agreement ever came to be an enforceable agreement under the requirement in paragraph 14. You responded that it is an issue to present to a mediator. I pointed out that whether there is a contract between the parties containing a mediation provision is an issue that must be addressed first in any motion to compel mediation, and requested that Holy Cross provide the basis for its position on that issue in order to meet the parties' obligation under Local Rule 7.1(a)(2) to resolve or narrow the issues to be resolved in any motion filed with the Court. The issue may be capable of narrowing, but Mr. Prior needs to see the documentation on which Holy Cross relies in taking the position that the required vote of the Board of Trustees occurred. You declined to provide any further information or the documents claimed to support Holy Cross's position on the paragraph 14 issue.

I asked whether Holy Cross takes the position that there is a dispute between the parties whether a condition identified in paragraph 6 had been satisfied as to which the College has not received the corresponding payment relating to that condition. Although I believe you first said that Holy Cross did not take such a position, you clarified and said that it does. I reminded you that I have written a couple of letters in the last week asking that Holy Cross inform Mr. Prior of the condition it claims has been satisfied but the corresponding payment for that condition had not been made, but we received no response to those requests. You represented during our call that you provided that information in a letter "the other night." I have now re-reviewed our prior correspondence and do not have a letter from you providing that information. Please forward a copy of the specific letter you referenced during our call, so that Mr. Prior may consider Holy Cross's position in connection with the parties' obligations under Local Rule 7.1(a)(2).

Regards,

**Steven M. Cowley**
**Partner**

**Duane Morris LLP**

100 High Street, Suite 2400
Boston, MA 02110-1724
**P:** +1 857 488 4261
**F:** +1 857 401 3090
**C**: +1 617 429 7142

SMCowley@duanemorris.com
www.duanemorris.com


**From:** Cowley, Steven M.
**Sent:** Tuesday, September 26, 2023 10:08 AM
**To:** Bierwirth, Joseph L. <jbierwirth@hembar.com>
**Cc:** Borys, Meaghan E. <mborys@hembar.com>; Benoit, Angela J. <ABenoit@duanemorris.com>
**Subject:** RE: Holy Cross - Request to Confer

Mr. Bierwirth,

Of course, that is not what my letter last night said, nor my previous letters asking that Holy Cross identify the disputed issue on which it requests mediation.  I can only confirm Mr. Prior's willingness to participate in mediation on an identified issue coming within the narrow ADR provision so many times before it is becomes useless. If Holy Cross does not intend to honor the agreement, it is pointless to attempt to persuade it to do so.

I will be available this afternoon from 12:30 – 2:00 p.m., and then after 4:00 p.m.  Please let me know what works best for you.  I can be reached this afternoon on my mobile number in the signature block below.

Regards,

**Steven M. Cowley**
Partner

Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
**P:** +1 857 488 4261
**F:** +1 857 401 3090
**C**: +1 617 429 7142

SMCowley@duanemorris.com
www.duanemorris.com


**From:** Bierwirth, Joseph L. <jbierwirth@hembar.com>
**Sent:** Tuesday, September 26, 2023 8:28 AM

**To:** Cowley, Steven M. <SMCowley@duanemorris.com>
**Cc:** Borys, Meaghan E. <mborys@hembar.com>; Benoit, Angela J. <ABenoit@duanemorris.com>
**Subject:** Holy Cross - Request to Confer

Stephen,

I received your letter last night again rejecting my client's demand for mediation and arbitration.  Please let me know when you are available for a call either today or tomorrow regarding the filing of a Motion To Compel Mediation or Arbitration.  I can make myself available any time except between 10:30 and 12:30 on Wednesday.

Regards,
Joe

Joseph L. Bierwirth, Jr.
Hemenway & Barnes LLP | 75 State Street | Boston, MA  02109 | (617) 557-9728 | e-mail
Website | Hemenway Trust Company


For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.