**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

CORNELIUS B. PRIOR, JR.,

                Plaintiff,

     v.

TRUSTEES OF THE COLLEGE OF THE HOLY
CROSS,

                Defendants.

Case No. 4:23-cv-40116 - MRG

### SUR-REPLY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL MEDIATION AND ARBITRATION

Plaintiff Cornelius B. Prior, Jr. ("Mr. Prior"), by his undersigned attorneys, submits this Sur-Reply in support of his Opposition to Defendant Trustees of the College of the Holy Cross's (alternatively, "Holy Cross" or "the College") Motion to Compel Mediation and Arbitration and to Stay Further Proceedings ("Motion to Compel ADR").

### PROCEDURAL BACKGROUND

On September 13, 2023, Mr. Prior filed his Complaint against Holy Cross stemming from a series of conditional donations made for the express and targeted purpose of developing a Performing Art Center ("PAC") more quickly than the College's Board of Trustees otherwise planned, and Holy Cross's breaches of its fiduciary and contractual obligations undertaken in connection with Mr. Prior's donations. (ECF No. 1). On September 29, 2023, Holy Cross filed its Motion to Compel ADR. (ECF No. 6). Mr. Prior filed his Opposition to the Motion to Compel ADR on October 18, 2023 ("Opposition"). (ECF No. 10). Twenty days later, on November 7, 2023, Holy Cross filed a Motion for Leave to File a Reply Brief (ECF No. 13; "Motion for Leave")

along with a proposed brief and new declarations attaching new documents in support of Holy Cross' Motion to Compel ADR ("Proposed Reply") (ECF No. 13-1).  Separately, Mr. Prior has submitted an Opposition to Holy Cross's Motion for Leave, challenging the appropriateness of Holy Cross's new arguments and new evidence raised for the first time in the Proposed Reply.

In the event the Court grants Holy Cross's Motion for Leave, Mr. Prior submits this Sur-Reply in order to address the following new positions and evidence in Holy Cross's Proposed Reply: (1) the submission of new evidence Holy Cross contends supports a finding that the February 28, 2014 pledge letter containing the ADR provision at issue is an enforceable agreement; (2) a mischaracterization of Mr. Prior's breach of contract claims in order to manufacture an argument that Mr. Prior has conceded the February 28, 2014 pledge letter (which contains an ADR provision) is enforceable; (3) case law that Holy Cross contends is "controlling"; and (4) new evidence allegedly supporting the representation that Holy Cross negotiated and conferred with Mr. Prior in advance of filing its Motion To Compel ADR.  For the reasons set forth below, each new argument presented by Holy Cross is inaccurate.

## ARGUMENTS

I.   **Holy Cross's New Evidence Confirms The Pledge Letter Containing An ADR Provision Never Became A Binding Agreement.**

As established in Mr. Prior's Opposition (ECF No. 10 at pp. 8–9, 11–12, 17–18) and Opposition to the Motion for Leave (pp. 2–4, 6), Holy Cross stubbornly refused numerous requests to identify any support for its position that the February 28, 2014 pledge letter (which contains a number of ADR provisions, including the provision on which Holy Cross grounds its Motion to Compel ADR) was approved by the Board of Trustees.  The pledge letter expressly states that it imposes no obligation on Mr. Prior (which would include an obligation to participate in mediation and arbitration) until approved by the Board of Trustees:

> 14.     Given its importance and specific performance requirements by the College, (i) the Donor expressly acknowledges that this gift agreement must be approved by the College's Board of Trustees, and (ii) **the College expressly acknowledges that the Donor has no obligations pursuant to this Agreement until said Agreement is approved by the College's Board of Trustees.**

Declaration of Steven M. Cowley ("Cowley Decl.") ( ECF No. 12-2) at ¶ 4 and Ex. 2, Par. 14).

Despite being a fundamental element of its Motion to Compel ADR, Holy Cross failed to present

support for its contention that the Board of Trustees approved the pledge letter and created a

binding agreement between the parties.  *See* Opposition (ECF No. 10, pp. 10–14).

Holy Cross's Proposed Reply includes for the first time the letter agreement allegedly

submitted to the Executive Committee – not the Board of Trustees – and its extreme reluctance to

disclose that document to Mr. Prior previously is now understandable.  The College's Executive

Committee was provided a **<u>draft</u>** dated July 26, 2013 for review, **<u>not</u>** the February 28, 2014 pledge

letter signed by Mr. Prior and Holy Cross.  *See* Supplemental Declaration of Dorothy Hauver (ECF

No. 13-2, Ex. B).  Even if an action by the Executive Committee held any significance under the

terms of the February 28, 2014 pledge letter – it did not, as explained below – Holy Cross has now

begrudgingly conceded that the Executive Committee never even saw, let alone voted to approve,

the agreement actually signed by the Parties.  Holy Cross offers no interpretation of the pledge

letter or other explanation for its supposition that approval of a document other than the pledge

letter signed by the parties satisfies the pledge letter's approval requirement.

More importantly, the Proposed Reply makes clear that Holy Cross never submitted the

pledge letter (neither the February 28, 2014 signed letter, nor any draft) to the Board of Trustees

for review or approval, the express requirement for establishing a final, binding agreement.

Instead, Holy Cross argues the Parties' provision stating that the pledge letter imposed no

obligations on Mr. Prior "until said Agreement is approved by the College's Board of Trustees"

3

should be interpreted to mean that the pledge letter imposed full obligations on Mr. Prior immediately, because the Executive Committee approved a draft agreement two days prior. [1]

That is a plainly inaccurate interpretation of the Parties' careful language expressly limiting when and how the pledge letter would become effective and impose obligations on Mr. Prior - not **"until"** approval by the Board of Trustees.  On February 28, 2014, the Parties signed a version of the pledge letter that had been amended following the Executive Committee's review on February 26, 2014.  If the Parties intended that the Executive Committee's approval of an earlier draft rendered the pledge letter immediately effective and enforceable against Mr. Prior upon the Parties' signature, with no further action by the Board of Trustees required, inclusion of the inaccurate Paragraph 14 in the February 28 version signed by the Parties is incomprehensible. Why would the Parties reference approval by the Board of Trustees if they knew and intended that action by the Executive Committee was sufficient?  Why would the Parties agree on February 28, 2014 that Mr. Prior "has no obligations pursuant to this Agreement until [the pledge letter] is approved by the College's Board of Trustees" if, as Holy Cross now argues, they actually intended the pledge letter already had been effectively approved on February 26, 2014?

Holy Cross's effort to render Paragraph 14 of the pledge letter meaningless and inaccurate flatly contradicts black letter Massachusetts contract interpretation law.  *See Bos. Elevated Ry. Co. v. Metro. Transit Auth.*, 323 Mass. 562, 575 (1949) ("Not only must due weight be accorded to the immediate context, but no part of the contract is to be disregarded."); *see also Glob. NAPs, Inc. v. Verizon New England, Inc.*, 447 F. Supp. 2d 39, 50 (D. Mass. 2006), aff'd, 505 F.3d 43 (1st Cir. 2007) (quoting *Tupper v. Hancock*, 319 Mass. 105, 108 (1946) ("It is a canon of construction that

---

[1] *See* Declaration of Dorothy A. Hauver (ECF No. 6-1, Ex. 3)(the Executive Committee reviewed and approved the draft document at a February 26, 2014 meeting).

every word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible.")).  Significantly, the requirement for full Board of Trustees approval of the February 28, 2014 pledge letter was a material term for Mr. Prior.  *See* Supplemental Declaration of Cornelius B. Prior, Jr. ("Prior Suppl. Decl.") at ¶¶ 3–8.  The core purpose of Mr. Prior's announcement of a willingness to donate $25 million for prompt construction of a PAC was to induce the Board of Trustees to reconsider its decision in 2012 to ignore the request of the faculty for construction of a PAC and, instead, to prioritize other projects that Mr. Prior and others on the President's Advisory Council did not consider to be as central to the College's liberal arts mission.  *Id.*  Mr. Prior conditioned his offer to donate $25 million on the Board of Trustees' reconsideration of its decision and commitment to build a PAC right away.  *Id.*  In short, an actual vote by the Board of Trustees to approve the commitments imposed in the February 28, 2014 pledge letter was a meaningful term to Mr. Prior, touching on the core purpose of his donation agreement, and Holy Cross's disregard of that requirement has a consequence spelled out clearly in Paragraph 14 of that document – the February 28, 2014 pledge letter never became a binding agreement and imposes no obligations on Mr. Prior.

Holy Cross's allegation that its 2014 Bylaws permitted the Executive Committee to take action on behalf of the Board of Trustees – an allegation that Holy Cross makes without submitting the 2014 Bylaws itself, ignoring its burden of proof on the question whether a valid agreement to mediate or arbitrate ever came into existence – is a non sequitur.  This case does not present a question of corporate governance standards; this case presents a question of contract enforcement. Regardless of whether the Executive Committee might be authorized to take some actions binding on the College in lieu of a meeting of the Board of Trustees, the Parties here, fully aware of an action by the Executive Committee two days before, expressly agreed that a vote by the Board of

Trustees to approve the February 28, 2014 pledge letter was required before that letter would impose any binding obligation on Mr. Prior. Holy Cross's position that it was free to unilaterally ignore or modify its agreement with Mr. Prior because it found it inconvenient has no support under Massachusetts contract law.

## II.   Mr. Prior's Breach Of Contract Claims Do Not Arise Out Of The February 28, 2014 Pledge Letter.

In light of its inability to prove that the letter's express pre-condition was ever met, Holy Cross's misrepresents Mr. Prior's breach of contract claims as premised on the February 28, 2014 pledge letter, arguing that the Complaint concedes the pledge letter is binding and enforceable. Specifically, Holy Cross represents "the gravamen of Mr. Prior's Complaint is that the College 'chose to significantly delay development of [the] PAC' and that this purportedly 'violated its agreement to pursue prompt and continuous development of the PAC'" and then argues that "the sole possible textual basis for the College's asserted obligation to pursue 'prompt and continuous development' of the PAC is contained in Paragraph 6 of the Agreement". Proposed Reply (ECF No. 13-1, p. 7). Holy Cross is wrong. Mr. Prior's breach of contract claims are not grounded in Paragraph 6 of the February 28, 2014 pledge letter; they arise out of Holy Cross's breaches of its oral agreements to promptly construct a PAC and to use Mr. Prior's donations solely for the purpose of that construction in consideration of Mr. Prior's $5 million in donations in 2012 and 2013 and pledge of a total of $25 million, as well as the College's 2015 oral agreement to stop delaying the PAC and construct it promptly when it induced Mr. Prior to donate an additional $3,054,720 toward an athletic center project he did not otherwise support. Prior Suppl. Decl. at ¶¶ 3–8. Holy Cross's Proposed Reply does not even acknowledge Mr. Prior's $3,054,720 breach of contract claim, let alone try to explain how it could arise out of a February 28, 2014 pledge letter that does not contemplate that 2015 conditional donation agreement.

Holy Cross's attempt to re-write Mr. Prior's breach of contract claims, including reducing his claims by over $3 million, is a transparent attempt to avoid its burden to prove the parties reached an enforceable agreement to mediate and arbitrate disputes by pretending that Mr. Prior has conceded such an agreement in his own claims.  He has not.  Mr. Prior has made no allegation that the February 28, 2014 pledge letter became a binding agreement, nor is any claim asserted in his Complaint reliant on such a premise.  Instead, Mr. Prior's claims arise out of the oral agreements by Holy Cross the year before and year following the parties' exchange of the 2014 letter, which oral agreements induced Mr. Prior to donation approximately $21 million dollars on conditions that the College chose not to meet and now must remit to Mr. Prior's chosen charity.

III.    **The Controlling Case Law Does Not Support Holy Cross's Motion to Compel ADR.**

Holy Cross's contention that Mr. Prior's Opposition fails to address controlling case law on arbitration clauses is misplaced.  In fact, Mr. Prior's Opposition identified factual and legal grounds for challenging both the existence of a binding agreement containing an arbitration provision and an issue in the Complaint coming within the ADR provision relied on by Holy Cross. Opposition (ECF No. 10 at pp. 3, 5, 9–14).  The Federal Arbitration Act clearly requires a jury trial on those disputed issues before mediation and arbitration can be ordered.  9 U.S.C. § 4.  *See Visual Creations, Inc. v. IDL Worldwide, Inc.*, No. CV 17-405 WES, 2018 WL 344989, at *1 (D.R.I. Jan. 9, 2018) (under the FAA, the existence and application of arbitration agreements, including the scope, are triable issues and preserved by the party by requesting a trial in the complaint); *see also Air-Con, Inc. v. Daikin Applied Latin Am.*, LLC, 21 F.4th 168 (1st Cir. 2021). Holy Cross ignored these fundamental issues and controlling case law requiring that such gatekeeping issues be resolved by the court before arbitration can be imposed on a party. *See* Opposition (ECF No. 10 at pp. 9–14).  Incongruously, Holy Cross instead points to a cases

involving binding agreements to arbitrate disputes under broad-scope arbitration provisions and then declares that those decisions' preference for finding disputes to fit within such broad provisions somehow controls resolution of Mr. Prior's challenge to the binding nature of the alleged arbitration agreement and the applicability of a peculiarly narrow arbitration provision to claims he has asserted that do not arise under the pledge letter agreement at all, let alone the very issues within the pledge letter applicable to the ADR provision at issues. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985) (analyzing provision requiring arbitration of "all disputes" and Arbitration Act applicability to statutory antitrust claims); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651–52 (1986) (holding that the parties' intention and question of interpretation of the arbitration provision was a question for the courts, not an arbitrator); *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 7–9 (1st Cir. 2014) (requiring arbitration where the relevant clause mandated arbitration over disputes "arising out of or relating to" the contracts at issue and the party resisting failed to provide evidence rebutting the provision after addressing gatekeeping issues.). *See also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 576–85 (1960) (despite the existence of a broad arbitration clause, the court addressed gatekeeping requirements and held that the scope of the clause did not cover the claims at issue); *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*, 226 F.3d 15, 24–25 (1st Cir. 2000) (denying a motion to compel arbitration and explaining that, while favored, arbitration is "subject to restraints" including the rules of contract interpretation).

Holy Cross has failed to identify, and Mr. Prior is not aware of, a single case standing for the proposition that when parties agree to arbitrate narrow issues that might arise under an agreement, the express limitations in their agreement are to be ignored and the parties are to be forced to arbitrate all disputes that may arise between them, even those that do not arise the under

the agreement containing the narrow arbitration provision.  But that is precisely what Holy Cross

argues for in this case.  Specifically, Holy Cross contends that a provision stating "if an issue arises

relating to whether any condition for making any payments described in Paragraph 6 of the

Agreement has been satisfied . . . the Donor and the College agree to endeavor to resolve the issue

by mediation . . . then . . . arbitration" should be interpreted to mean "should any dispute arise

between the parties concerning their relationship, they shall submit their dispute to mediation and

then arbitration if still unresolved."  Not only is there no "controlling case law" requiring such a

re-write of the ADR provision it relies on, the requested modification and expansion of the

mediation and arbitration obligation would flatly contradict the black letter principle that a party

cannot be compelled to arbitrate a dispute it has not agreed to arbitrate.  *See* Opposition (ECF Doc.

10) pp. 9-10 (identifying case law establishing this fundamental limitation on arbitration).

IV.    **Attorney Bierwirth's Supplemental Declaration Demonstrates Holy Cross's Failure To Confer In Advance Of Its Motion and Failed to Comply with the Negotiation Requirement of the ADR Provision Underlying Its Motion.**

Attorney Bierwirth's Supplemental Declaration ("Bierwirth Suppl. Decl.") and attached

string of pre-Motion correspondence further supports – they do not contradict – Mr. Prior's point

that Holy Cross purposefully refused to confer in good faith, and flatly refused to negotiate,

concerning its contention that there is a dispute regarding "whether a condition for making any

payments described in Paragraph 6 of the Agreement has been satisfied," which is the very narrow

category of disputes subject to the ADR provision on which Holy Cross relies.  Cowley Decl. ¶ 11

and Ex. 6, ¶ 2 (ECF No. 12-6).  Notably, Attorney Bierwirth was unable to identify even a single

pre-Motion communications containing a single reference by Holy Cross to a condition in

Paragraph 6 of the pledge letter that it contends was satisfied without payment by Mr. Prior of a

corresponding $5 million donation.  *See* Bierwirth Suppl. Decl. Ex. A, pp. 34–39.  Holy Cross has

never informed Mr. Prior of such a claim, even though Mr. Prior made multiple requests that it do so in an effort to confer and determine whether there is an agreement or disagreement on any Paragraph 6 condition.  *See* Cowley Decl. Ex. 3, 6, 8, 9, 10; Bierwirth Suppl. Decl. Ex. A, pp. 7–8, 10–24, 26, 34–39 (ECF No. 13-3).

Incomprehensibly, Holy Cross presents its repeated refusals to discuss these fundamental issues with Mr. Prior as sufficient, wholly ignoring that the ADR provision on which its Motion to Compel is premised requires negotiations between the parties as an initial step, prior to mediation or arbitration:  "if an issue arises relating to whether any condition for making any payments described in Paragraph 6 of the Agreement has been satisfied, and if the issue cannot be settled through direct discussions, the Donor and the College agree to endeavor to resolve the issue by mediation . . . ."  Cowley Decl. ¶ 4, Ex. 2 ¶ 10.  To state the obvious, Mr. Prior cannot resolve an alleged dispute concerning a condition in Paragraph 6 that Holy Cross claims to have met without receiving the corresponding $5 million donation unless and until Holy Cross identifies the condition and how it claims to have met it.  Having failed to comply with the ADR Provision on which it relies, Holy Cross cannot establish that it is entitled to enforce that provision.

July 26, 2024

Respectfully submitted,

By: /s/ Steven M. Cowley
Steven M. Cowley (BBO# 554534)
100 High Street, Suite 2400
Boston, MA 02110
(857) 488-4200
scowley@duanemorris.com

*Counsel for Plaintiff Cornelius B. Prior, Jr.*

11

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


Dated:  July 26, 2024                                     */s/ Steven M. Cowley*
                                                          Steven M. Cowley