IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CORNELIUS B. PRIOR, JR.,<br><br>Plaintiff,<br><br>v.<br><br>TRUSTEES OF THE COLLEGE OF THE HOLY CROSS,<br><br>Defendants. | Case No. 4:23-cv-40116 - MRG |

**SUPPLEMENTAL DECLARATION OF CORNELIUS B. PRIOR JR.**

I, Cornelius B. Prior, Jr., declare and state as follows:

1. I am the plaintiff in the above-captioned lawsuit. I am over the age of twenty-one and fully competent to make this Declaration based on my personal knowledge and records.

2. I have reviewed the proposed reply papers submitted by defendant Trustees of the College of Holy Cross ("Holy Cross" or "College") in support of their motion to compel mediation and arbitration ("Reply"), including the Supplemental Declaration of Dorothy A. Hauver ("Supplemental Hauver Declaration"). I submit this Declaration to address the new arguments raised by Holy Cross in its Reply and the new documents attached to the Supplemental Hauver Declaration.

3. In my Complaint against Holy Cross, I assert a claim for breach of contract, arising out of the College's failure to honor its agreements to promptly commence and proceed with construction of a Performing Arts Center ("PAC") in consideration of my agreement to donate $25,000,000 toward that project, and later agreement to donate an additional $3,054,720 toward

an athletic center project I did not support solely to address a new requirement that the other project receive additional funding before the College would proceed with prompt construction of the PAC. As I explained in paragraphs 5-7 of my original Declaration (ECF Doc. 11), the express purpose of my agreements to donate these funds was to induce Holy Cross to revise its then priorities and instead to move forward right away with construction of a PAC as requested by the College's faculty in 2012. In 2012, when the President's Advisory Council, of which I was a member, learned of the Board of Trustees' decision not to prioritize construction of a PAC and instead to prioritize other projects, contrary to the strong request of the faculty, I was urged by many members to lead an effort to change the Trustees' priorities. Initially I was unable to persuade any Trustees or the President to change that decision, which led me to offer to donate a total of $25 million, backed up by an initial transfer of $2 million, conditioned on Holy Cross agreeing to construct a PAC promptly and to devote my funds solely for that project. After Holy Cross agreed to these conditions in 2013, I donated an additional $3 million for this project.

4.     Holy Cross has mischaracterized my breach of contract claim as arising out of a February 28, 2014 pledge letter. It does not. My breach of contract claim arises out of (1) the College's verbal agreements in 2013 to promptly move forward with development and construction of the PAC and to use my donations solely for purposes of the construction of the PAC, in exchange for my initial donations of $5,000,000 toward my pledge of $25,000,000; and (2) the College's verbal agreement in 2015 to move forward promptly with construction of the PAC in exchange for my donation of $3,054,720 toward an athletic center project I did not otherwise support.

5.     The Conditional Donations referred to in my Complaint were the approximately $21,000,000 in total donations I made to the College conditioned on its meeting the obligations

under its oral agreements to promptly move forward with development and construction of the PAC first undertaken in 2013 and then again in 2015, and to use my donations of approximately $18,000,000 solely for purposes of the construction of the PAC. The reference to Conditional Donations in my Complaint does not refer to the specified timing for donations set out in Paragraph 6 of the February 28, 2014 pledge letter. Those specifications were ignored by the College and I had no reason to consider them applicable to my donations, which did not align with the specifications.

6. In my discussions with Holy Cross concerning the pledge letter, we did not contemplate or discuss the possibility that Holy Cross would block development of the PAC based on a lack of adequate funding for an athletic facility project, and nothing in paragraph 6 or any other section of the pledge letter says anything about the conditions that applied to my agreement to pay $3,054,720 toward construction of an athletic center project I did not otherwise support. Instead, I agreed to donate that amount to move construction of the athletic center project forward based on Holy Cross's agreement to then promptly move forward with construction of the PAC. My claim for breach of contract against Holy Cross is based, in part, on the College's breach of that agreement. It took my $3,054,720, moved forward with its athletic center project, but continued to delay construction of the PAC for another four years without my agreement to amend the condition applicable to my donation.

7. In my discussions with administrators at the College concerning a written pledge letter, I made clear that it was important to me that the Board of Trustees review and sign off on my pledge letter, because it was the Board of Trustees' decision not to agree to prioritize construction of a PAC as requested by the College's faculty that my donation agreement was intended to reverse. Holy Cross never informed me that it would not submit my pledge letter to

3

the Board of Trustees for review and approval. Because of my position, Section 14 was added to the draft pledge letter stating:

> 14. Given its importance and specific performance requirements by the College, (i) the Donor expressly acknowledges that this gift agreement must be approved by the College's Board of Trustees, and (ii) the College expressly acknowledges that the Donor has no obligations pursuant to this Agreement until said Agreement is approved by the College's Board of Trustees.

8. In our discussions concerning a written pledge letter, Holy Cross did not suggest to me that it believed the Paragraph 14 requirement for Board of Trustees approval of the agreement was met prior to my even signing the pledge letter based on a vote of the Executive Committee. Had Holy Cross informed me that it would avoid submitting the pledge letter agreement to the Board of Trustees after it was signed for approval, I would not have signed the pledge letter as written and insisted on full Board of Trustees approval before agreeing to be bound to donate $25,000,000 to the College, given that my main purpose all along was to induce the Board of Trustees to reconsider their 2012 decision on whether to prioritize prompt construction of a PAC.

Signed under the pains and penalties of perjury this 21st day of November, 2023.

_____
Cornelius B. Prior, Jr.

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

Dated: July 26, 2024                               */s/ Steven M. Cowley*
                                                                Steven M. Cowley