```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2

 3

 4     Cornelius B. Prior, Jr.,       )
                     Plaintiff,       )
 5                                    )
                                      )
 6     vs.                            )    Case No. 23-cv-40116-MRG
                                      )
 7                                    )
       Trustees of the College of     )
 8     the Holy Cross,                )
                     Defendant.       )
 9

10

11     BEFORE:  The Honorable Magistrate Judge David H. Hennessy

12

13                          Motion Hearing

14

15

16                                    United States District Court
                                      595 Main Street
17                                    Worcester, Massachusetts
                                      October 31, 2024
18

19

20

21

22

23                    Marianne Kusa-Ryll, RDR, CRR
                         Official Court Reporter
24                     United States District Court
                       595 Main Street, Room 514A
25                     Worcester, MA 01608-2093
                     508-929-3399 justicehill@aol.com
                 Mechanical Steno - Transcript by Computer
```

```
 1   APPEARANCES:

 2   Duane Morris LLP
     Steven M. Cowley, Esquire
 3   100 High Street
     Suite 2400
 4   Boston, Massachusetts  02210-1724
     on behalf of the Plaintiff
 5
     Holland & Knight, LLP
 6   Benjamin M. McGovern, Esquire
     10 St. James Avenue
 7   Suite 12
     Boston, Massachusetts 02116
 8   on behalf of the Defendant

 9   Hemenway & Barnes
     Joseph L. Bierwirth, Esquire
10   60 State Street
     Boston, Massachusetts 02109
11   on behalf of the Defendant

12   Also present:

13   Elizabeth Small, General Counsel

14

15              Proceedings recorded by sound recording
                 and produced by computer-aided stenography
16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

1

2          (At 10:07:49 a.m., the audio recording begins.)

3          THE CLERK:  The U.S. District Court for the District

4    of Massachusetts is now in session, the Honorable David

5    Hennessy presiding.

6          You may be seated.

7          Today is October 31st, 2024.  We're on the record in

8    the matter of Prior, Jr., versus Trustees of the College of the

9    Holy Cross, Docket 23-cv-40116.

10          Will counsel please identify themselves for the

11    record.

12          MR. COWLEY:  Good morning, your Honor.  Steven Cowley

13    from the firm Duane Morris for the plaintiff Cornelius Prior,

14    Jr.

15          THE COURT:  Good morning, Mr. Cowley.

16          MR. McGOVERN:  Good morning, your Honor.  Benjamin

17    McGovern for the Trustees of the College of the Holy Cross.

18          THE COURT:  Good morning, Mr. McGovern.

19          MR. BIERWIRTH:  Good morning, Your Honor.  Joe

20    Bierwirth also for the Trustees.

21          THE COURT:  Good morning, Mr. Bierwirth.

22          MS. SMALL:  Elizabeth Small, General Counsel.

23          THE COURT:  Good morning.

24          Dawn, at the sidebar, right?

25          THE CLERK:  Yes, let me put you on.

1          (The Court conferred with the clerk.)

2          THE COURT:  Can I see counsel for a sidebar.

3          So let me know when we have it.  Jazz music.

4          COUNSEL:  It's pleasant.

5          THE COURT:  Yes, that's right.

6          (Sidebar as follows:)













































1 ████████████████████████████████

2 ████████████████████████████████████

3 ██████████████████████████████████████

4 ███████████████████████████████████████

5 ███████████████████████████████████████

6 ████████████████████████████████████

7 ████████████████████████████████████

8 ███████████████████████████████████

9 ████████████████████████████████████████

10 ███████████

11 ██████████████████

12 ████████████████████████

13 ███████████████████████████████

14 ██████████████████████

15 ████████████████

16 ███████████████████

17 █████████████████

18          (End of sidebar.)

19          THE COURT:  Okay.  Counsel, I've -- I received this

20 morning or I know you filed them last night, your -- the status

21 reports.  I appreciate them.  And it seems to me that the ball

22 is very much back in the -- in my court on deciding whether we

23 have a binding agreement.

24          If I could just go to your status reports.  I guess my

25 question goes to the trustees.  It sounds like there was

1    significant information shared, but it did not include the

2    actual accounting documents, and my question is whether the

3    Court decides that the matter should be referred for

4    mediation/arbitration or whether the Court does not decide that

5    and it gets kicked back to Judge Guzman and you go into

6    discovery.

7         Either way, aren't those documents going to be

8    produced?  Aren't they going to have to be produced?  When I

9    say "those documents," I mean the actual accounting documents

10   that I understand to be the -- what Mr. Prior wanted and feels

11   that he has -- or has not received?

12        MR. McGOVERN:  Well -- well, your Honor, I think -- I

13   think you've identified the difficulty, and I guess my -- I

14   hate to answer a question with a question, but I'm not sure I

15   understand what you're referring to when you say --

16        THE COURT:  Okay.

17        MR. McGOVERN:  -- accounting documents.  Because, in

18   our view, we had produced the accounting documents.  They were

19   filed last night.  I have extra copies here.  You know, this is

20   not like there's a book or ledger that we can just turn over.

21   It's a computerized system, and we have to run reports.  We

22   have to extract the relevant information.  That is an

23   accounting.  I mean when you say an accounting document, in our

24   view, what we've produced is what there is.  So I guess I'm a

25   little uncertain what more your Honor is referring to.

1          THE COURT:  Okay.  No, that's a fair question.

2          Mr. Cowley, maybe you can help me out.  What -- what,

3     in terms of the accounting documents do you want that you

4     haven't gotten?

5          MR. COWLEY:  Well, we don't have the -- any actual

6     records on which any -- anyone on Mr. Prior's behalf would say,

7     I can look at this and tell you what I think happened to the

8     money.  They won't show us.  So we have enough --

9          THE COURT:  So, for instance, Capital Advisor Group

10    actual records or --

11         MR. COWLEY:  They have reports, right.  This -- let

12    me -- let me.  It's easier if -- if you -- if you have

13    available to you, and you can look at the actual pages, some of

14    the actual documents.  I could show you fundamentally there's

15    not an accounting for Mr. Prior's donations, even the way they

16    spin it, which is their -- their description how they get the

17    numbers to -- to work out or they say to us we consider

18    your eight- -- I'm going to call it -- I'm rounding up --

19    $18 million --

20         THE COURT:  Right.  Okay.

21         MR. COWLEY:  -- of donations, and we're going to show

22    you we spent more than $18 million before we ever took those

23    out of the accounts.  And I said, Well, just show me the

24    accounts you put them in and start.  They won't do that.  They

25    won't show.  So there's a couple of years of nothing, silence.

1          Then they list in their description, their summary,

2     they list the status of deposits in two accounts, and what they

3     want to say in these papers, which turned out to be not true

4     when we talked, is these are separate accounts for Mr. Prior's

5     donations.  They're not.  At least one of them we agree is a

6     commingled account.  Definitely agree on that.

7          I don't -- we don't agree on the others being

8     described as a single account for Mr. Prior, but we can't look

9     at the records to show that.  So we're taking it at face value.

10    They're saying they're single accounts.

11         If you just compare the numbers where they put on one

12    page, here's the accounts that held your deposits, here's when

13    it went down to zero over what period of time, and they say

14    there's only three transfers of your money out ever.

15         That account, the accounts combined, and, you know, in

16    the -- in seriatim when you look at them, the highest amount of

17    deposit at any time was 10,866,000.  Now, this is with 500 and

18    something thousand dollars of income which -- how they come up

19    with that number is interesting, but we don't see it as

20    actually being reported by the investment banks or the

21    investment institutions.

22         So that's their accounting for what's attributable on

23    income to Mr. Prior's donations.  So 566,000 is in this

24    $10.8 million that is in an account, and you can look at that

25    in a couple of places.

1          There's -- the most clear is Exhibit C to my status

2    report has just the accounts.  In Exhibit C, you could see the

3    high water mark for the deposit at any time before they report

4    any transfers out of Mr. Prior's donations.  $10.8 million.

5    There is no question that they recognize as of long before the

6    high water mark in the deposit accounts, Mr. Prior donated

7    $17 million, just under $18 million.

8          Now, the -- there is a gap in the numbers.  Mr. Prior

9    says it's 17,9 something.  They say 17,5 because they take out

10   when they -- they sold a couple of them weeks after -- a couple

11   of donations of stock they sold weeks after.  They said the

12   money that was made and costs incurred in total all totaled

13   brings it down to 17,5.  You could argue about which number is

14   right, 17,9 or 17,5, but we're not even there.  We're not at

15   that level of minutia in argument.  Call it $18 million of

16   rounding up acknowledging of -- of donations they acknowledge

17   he made, and they're saying they used $18 million on the PAC,

18   but it was never in any of these accounts.  They will not give

19   us any statement, I was told in no certain terms quite harshly,

20   I could not question about something that wasn't on one of

21   these reports.  I could not find out about any other account

22   that wasn't disclosed.  So there's some other account that has

23   over $7 million in it of Mr. Prior's donations, which they say

24   they used on the PAC, and they will not tell us where it went,

25   when it went in, when it went out.

1           There is no way to say --

2           THE COURT:  Would it be fair, Mr. Cowley -- I'm sorry.

3   Would it be -- would it be fair to say you're looking to trace

4   the money from the donation of the stock, the sale of it, to

5   the deposit of it to the use of that money to pay for the

6   Performing Arts Center?

7           MR. COWLEY:  Right.  So if you look at --

8           THE COURT:  Would that be a fair --

9           MR. COWLEY:  Yes.  So Exhibit A --

10          THE COURT:  So if -- let me just stop you there.

11          Mr. McGovern, I think that's the answer to your

12  question, which I appreciate.  So they're looking to give you,

13  for example, on 4/2 of 2014, Mr. Prior makes a donation of, I

14  don't know, around $2.7 million in stock.  As I understand it,

15  he's looking for, okay, you got the stock, you -- the value of

16  it is whatever the mean was on that day.  You sold it.  Where

17  did the proceeds go?  The proceeds sat there.  What interest

18  did they earn?  When were they used to pay for part of the

19  construction or design or whatever of the PAC, and then a

20  demonstration that that's how the money was used.

21          MR. McGOVERN:  All in this document, your Honor.  All

22  of it.  Accounted to -- accounted for to the penny.

23          Mr. Cowley said a moment ago that he can't account the

24  high water mark was $10 million something.  It's page 5, I

25  believe it's Exhibit B to his filing last night.  It shows all

1   the inflows of Mr. Prior's donations, the cumulative total of

2   17 and a half million dollars.  It tells you the date it came

3   in, the account it went into, and then the bottom is a

4   description of when it came out.

5          In terms of interest and other things, that -- that's

6   the interest earned.  It is the second-to-last page of

7   Exhibit B that shows you the account the monies were in and the

8   interest that was earned with respect to each account.

9          I don't mean to belabor it, your Honor, because the

10  point that I'd like to make is I think this exercise has

11  demonstrated to you the problem here.

12         We've given Mr. Prior an accounting that allows him to

13  account for his money to the penny.  Not good enough for him.

14  He wants more.  He will always want more.  He will never be

15  satisfied.  And the more that we get into that, the more it

16  looks like discovery; and the more it looks like discovery, the

17  more it is inconsistent with our position that we ought to be

18  arbitrating this and not producing discovery in a federal

19  courtroom.

20         So that's the fundamental problem that we're having.

21  We have to draw a line somewhere.  We drew the line where your

22  Honor drew it.  Produce Mr. Prior an accounting.  We have done

23  that.

24         THE COURT:  I -- but to go back to where I started.

25  The underlying financial documents, the bank statement that

1   shows -- the page of the bank statement that shows here's

2   $2.7 million going into XYZ account, whatever.

3         Aren't you going to have to produce that either to an

4   arbitrator, if you're right, or in discovery if you're wrong,

5   and Mr. Prior's correct when the case goes back to the district

6   judge?

7         MR. McGOVERN:  The short answer to your question is

8   yes.

9         THE COURT:  Well, I mean I'm trying to interpret the

10   language of the pledge agreement insofar as you're relying on

11   it.  I understand Mr. Prior is not saying -- is saying that's

12   not our agreement; but insofar as it's there, if an issue

13   arises and if the issue cannot be settled through discussions

14   then they agree to endeavor to resolve the issue by mediation,

15   arbitration, and so on.  So, I mean, I don't know what -- what

16   discussions are.

17         MR. McGOVERN:  From my perspective, your Honor, and

18   the direct discussions we've checked that box.  We've described

19   it to you in the status report.  We met directly at least

20   twice.  From my perspective, they've been meaningful and even

21   productive, but I think we've gone as far as we can go.

22         So from our perspective, the next step down that road

23   is mediation.

24         MR. COWLEY:  Your Honor, if I might just draw your

25   attention to Exhibit A to my status report.

1          THE COURT:  Okay.

2          MR. COWLEY:  It describes what you were -- what you

3   were trying to verbalize in a description of, you know, start

4   with each donation and let us follow it, show us the deposit,

5   show us the -- the -- the income as it was held.  Show us all

6   the transfers out, and show us to what purpose each transfer

7   was sent.  That has never been produced it.  It's not here.

8          And just taking -- taking up what Mr. McGovern said,

9   he asked you to look at page 5 of Exhibit B to the status

10  report.

11         THE COURT:  Yes.

12         MR. COWLEY:  He said, look, we accounted for 17 -- you

13  know, $18 million.  Round it up.  We accounted for all of it,

14  and we said we told you in the bottom, these -- all these

15  transfers went out, and the -- and payments to the

16  PAC -- payments for development of the PAC exceeded what was

17  transferred out, so we attribute all of it to the PAC.  I

18  understand that.

19         Now, turn to the next page, page 6.  It shows you at

20  the top the $18 million came in from you.  Donations.  We say

21  they were all used.

22         The only two accounts they're willing to talk about,

23  the only two accounts where they're talking about making an

24  investment, earning investment, you know, the proceeds have to

25  be used on the PAC as well, et cetera, those total $10.8 million.

1          So the mystery, $7 million, which they recognized

2   taking in, they recognize spending, they refused to tell us

3   what account it was held in, for how long, what income was made

4   on it, what was done with it, where it went.  They will not

5   tell us.

6          There is a $7 million gap obvious on the face of

7   page 6, and it becomes even more obvious when you look at

8   Exhibit C, which was produced a month later.

9          The -- the -- there is no question that the agreement

10  that they say they want enforced, which they must say they

11  honored, required them to have a segregated account and

12  exclusive use of the money in that account, including all

13  income, only on certain aspects of the -- of the development of

14  the PAC, but you could broadly call it the building and

15  outfitting of the PAC.  They did not do that.  There's no

16  question, there's an admission by Holy Cross at this point they

17  commingled the funds.  There's years of holding the money that

18  they're not going to talk about at all.  There's $7 million of

19  the funds they will not talk about at all.  So it can't be in

20  the -- one of the two segregated accounts that they described

21  in their papers, separate accounts for Mr. Prior.  It's not

22  there.  $7 million held somewhere else.  And one of the two

23  described in their papers as a separate account for Mr. Prior,

24  it was admitted yesterday while that actually held at least

25  $15 million of general funds and the monies were spent and used

1   on general funds too from that account, but they will not

2   document it.

3          So by the clear -- just what they submitted, there's

4   no enforceable agreement.  Even if you get over all the issues

5   we talked about last time, which focused on whether it was

6   agreed, whether it ever become effective, whether there's

7   waiver of an argument that it wasn't effective, all those

8   issues are -- are -- start the -- start the day.

9          You asked us to get together and look at accounting,

10  and now the accounting records reveal they flatly did not honor

11  the requirement that they maintain a segregated account and

12  exclusively use the money for the PAC.

13         Instead, they took all the money that Mr. Prior

14  donated that they're willing to track through those two

15  accounts, and they admit now -- it's not in the papers.  They

16  won't document it.  But they admit now to me they transferred

17  it all to their general fund.  There is no possibility of

18  describing a transfer of $18 million to your -- to their

19  general fund and then forensic accounting going backwards to

20  treat -- to line item it --

21             THE COURT:  All right.

22             MR. COWLEY:  -- and satisfying segregated accounting.

23             MR. McGOVERN:  Your Honor --

24             THE COURT:  Let's -- I'm just going to put it in the

25  column of this is yet something else on which we cannot agree.

1          MR. McGOVERN:  Well, I was going to say --

2          THE COURT:  Mr. McGovern, thank you.  I really

3    appreciate the arguments on it.

4          Suppose you agreed on an independent accounting, get

5    a -- one of the big four in, give them the books, have them do

6    a report, you can agree on a protective order; you share the

7    cost of it; you all get a copy of it; the Court gets a copy of

8    it, and just get this thing -- I mean if that's -- if that's

9    the issue, if -- if the issue really is has Holy Cross done

10   what they said they were going to do, if that's the issue --

11         MR. McGOVERN:  Well -- well, your Honor, a couple -- a

12   couple things.

13         THE COURT:  But can I just before --

14         MR. McGOVERN:  Yeah.

15         THE COURT:  If that's not the issue, if there's some

16   other issue, and this is just a small battle in a bigger war,

17   let's -- let's not waste time and money doing that.  Let's take

18   the next logical step.

19         MR. COWLEY:  It is a gatekeeping issue, your Honor.

20   It is not the war.  The war is about whether they honored the

21   agreement to prioritize the development of the PAC --

22   (indiscernible).

23         THE COURT:  I guess what I'm asking, Mr. Cowley, is

24   would this solve anything?

25         I -- I can't get Holy Cross to do an accounting that

1  satisfies your client.  I'm not taking a right or wrong on it.

2  I'm just -- if you're telling me they did it and it's not

3  satisfactory.  I hear your arguments, you don't need to make

4  them again.

5          MR. COWLEY:  No --

6          THE COURT:  I hear Holy Cross's argument.

7          MR. COWLEY:  -- it's -- it's the accounting claim

8  you're saying there's a solution for.  What I hear you saying

9  is there's a solution for it that takes out of the parties'

10  hands trying to work together to do an accounting and can they

11  work together to find someone else to do an accounting.  That

12  is one claim, but you asked a very specific question at the

13  end:  Is it one battle and there's a bigger war?  The answer to

14  that is yes.

15          THE COURT:  Yeah, no --

16          MR. COWLEY:  There's one battle, and there's a bigger

17  war.

18          THE COURT:  I guess I -- what I really meant was is

19  this going anywhere if -- if you get a -- a report from an

20  accountant with, you know, upon recognized appropriate

21  accounting standards, you get a report they do and --

22          MR. McGOVERN:  Could I speak to that, your Honor?

23          THE COURT:  Yeah.

24          MR. McGOVERN:  The first thing I want to say is

25  Mr. Cowley just said a lot of things about the accounting, very

1   little of which I agree with.  I cannot emphasize enough that

2   we do not agree that we've commingled funds -- (indiscernible).

3         THE COURT:  Mr. McGovern, the last thing either party

4   needs to say in this courtroom is they don't agree.

5         MR. McGOVERN:  Okay.  Fair enough.  But all that goes

6   to the merits.  To your question about the gatekeeping issues,

7   I don't think anything that we've been talking about has

8   anything to do with that.

9         But to your point, the point that you were just asking

10  about, before we submitted this accounting to Mr. Cowley, we

11  did pressure test it with a third-party accountant.  They gave

12  it a clean bill of health.

13        We'd give it to the Mass. Attorney General's office if

14  that would help things, have them take a look at it and give it

15  a clean bill of health.  Those are things that we're happy to

16  do and have done.

17        THE COURT:  Look, I'm not saying those are bad ideas.

18  My thought was an accountant applying standards is going to say

19  I need this, I need that, I don't need this, I don't need that.

20  They do a report.  You get a report.  You get it.  You get it.

21  I get it.  And, I mean, it's a thought to get this resolved.  I

22  mean we can't -- we're kind of stuck.

23        MR. COWLEY:  It -- it -- it very much is a gatekeeping

24  issue on the motion that you have, I think, because if you look

25  at paragraph 9, it's absolutely clear regardless of any other

1   fight about --

2          THE COURT:  Mr. Cowley, you don't need to argue.

3          MR. COWLEY:  Okay.

4          THE COURT:  I got it.

5          MR. COWLEY:  So --

6          THE COURT:  I really -- I got it last time.  I got it

7   this time.  In effect, I'm -- actually if I were to do this, if

8   Holy Cross agreed, I'd be granting your motion for the

9   accounting -- excuse -- your claim for an accounting.  So

10  you're...

11         MR. COWLEY:  I understand.  And the -- and given the

12  issues on the pending motion, given the point that you started

13  with, which is, well, whichever way it goes fight in

14  arbitration, fight here, it has got to be put on the table.

15  We're going to be doing litigation in this court on some claims

16  that aren't under the arbitration provision under any scenario,

17  and I think this is litigation in this court regardless of

18  whether it's also going to be used in an arbitration should the

19  Court say that there's an enforceable arbitration agreement on

20  the -- on the pledge.  It will have to be litigated.  So if

21  we're talking about coming up with a neutral to do an

22  accounting, it resolves the accounting claim as to whether one

23  will be done and how it will be done.  The use of that goes to

24  the merits of the other issues.  I think that's the -- it's

25  somewhat long-winded, but that's the best way I can answer your

1    question about whether it's the war or whether it's about.

2             THE COURT:  I regret saying that.

3             All right.  Well, look, I don't want to put you on the

4    spot.  Why don't you think about it.  I don't know that I have

5    the authority to order it, so -- but if you want to think about

6    it, agree on, you know, there are plenty of reputable

7    accountants in Boston, get one of them, have them do it, get a

8    report.

9             I'll ask you to give more thought and discussion to

10   the matter we discussed at sidebar.  If there's a need for

11   briefing, I'll contact you; otherwise, I'll just take the

12   motions that are before me and decide them.

13            MR. McGOVERN:  Okay.  Thank you, your Honor.

14            MR. COWLEY:  Thank you, your Honor.

15            THE COURT:  Okay.  We're in recess.

16            Thank you.

17            (At 11:02:50 a.m., the audio recording ended.)

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4    certify that the foregoing transcript is a true and accurate

5    transcription prepared to the best of my skill, knowledge, and

6    ability from the official electronic sound recording of the

7    proceedings before Magistrate Judge David H. Hennessy in the

8    above-entitled matter.

9

10

11        /s/ Marianne Kusa-Ryll                    12-03-2024
          Marianne Kusa-Ryll, RDR, CRR              Date
12        Federal Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25